FILED

December 20, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg _____
DEPUTY

9/5/2024 4:44 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-22-003608
Daniel Smith

**CAUSE NO. D-1-GN-22-003608**

| | | |
|---|---|---|
| **ANDREW PAUL VERA,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **OF TRAVIS COUNTY, TEXAS** |
| | § | |
| **CITY OF AUSTIN,** | § | |
| **Defendant.** | § | **455TH JUDICIAL DISTRICT** |

## PLAINTIFF'S SIXTH AMENDED COMPLAINT

NOW COMES Andrew Paul Vera ("Plaintiff" hereinafter) and files this his *Sixth Amended Complaint* alleging that the City of Austin violated the various rights of Plaintiff as more specifically pled herein. Plaintiff reserves the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support, thereof Plaintiff would respectfully show this tribunal the following:

## I. BRIEF INTRODUCTION TO THE CASE

1.    For the better part of a decade Vera, a former military veteran and good family man, had a stellar record with the City of Austin Police Department ("APD") with many commendations. All that changed when he filed a complaint with Internal Affairs ("IA"). Instead of completing a good faith investigation IA decided to "attack the messenger." Before long Vera became the object of an inquisition where his mental fitness was put under attack. Pursuant to Chapter 143 of the Texas Local Government the City convened the Austin Firefighter's, Police Officer's and Emergency Medical Services Personnel Civil Service Commission (the "Commission") which appointed a Board to consider the issue. As the facts below will clearly evidence this Board made a mockery of due process and fundamental fairness and became part of this "railroad job."

2.    For the reasons specific further delineated below, Plaintiff files this his *Sixth Amended Complaint.* He alleges violations of Article I, Section 13 and 19 of the Texas Constitution; Chapter 143 of the Texas Local Government Code; Chapter 554 of the Texas Government Code; Chapter 121 of the Texas Human Resources Code and for discrimination based upon disability pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794 et seq. and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. Moreover, he also alleges he was a victim of employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. ("Title VII").

## II.  DISCOVERY CONTROL PLAN

3.    Discovery in this cause will be conducted under Discovery Level 2.

## III. JURISDICTION

4.    The subject matter in controversy is within the jurisdictional limits of this Court.   Further, this Court has jurisdiction over the parties because both Plaintiff and Defendant are deemed as residents of the State of Texas.   Further pursuant to Tex. R. Civ. P. 47(c), Plaintiff seeks monetary relief over $ 250,000.00 for both economic and non-economic damages, past and future, which can only be ascertained by the date of a jury trial.

## IV.  VENUE

5.    Venue in Travis County is proper in this cause pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code, because all or a substantial part of the events or omissions giving rise to this suit occurred in this county.

## V.  PARTIES

6.   Plaintiff Andrew Paul Vera resides at 8011 Logwood Drive, Austin, Texas 78757. He may be served by and through the undersigned Counsel. For all times relevant to this Complaint, he was a resident of Travis County, Texas.

7.   The Defendant City of Austin may be served by and through their attorneys of record, the Honorable Mr. Darren Gibson and Mr. Josh Ordiway, of Littler Mendelson P.C., 100 Congress Avenue, Suite 1400, Austin, Texas 78701, (512) 982-7250 [Telephone], (512) 982-7248 [Facsimile], dgibson@littler.com [Email], jordiway@littler.com [Email].

## VI.  BRIEF PROCEDURAL RESUME

8.   On July 26, 2022 the City of Austin Firefighter's, Police Officer's and Emergency Medical Services Personnel Civil Service Commission (the "Commission") issued its report with the decision that Vera was unfit for duty. On or about July 29th the City's Human Resources Department sent Vera a copy of the Commission Report.[1]   This report is deemed final pursuant to Texas Local Government Code 143.081 which permits an aggrieved party to file a lawsuit in State Court within 10 days.

9.   Vera did so and filed *Original Petition* on August 8, 2022. Since that time he has filed five amendments, the latest being on January 12, 2024.

10.  On or about May 23, 2024 Vera filed a *Motion For Summary Judgment*.

11.  On or about July 22, 2024 the City of Austin filed a *Plea To The Jurisdiction and Motion For Summary Judgment*.

12.  These cross-motions are set for a hearing on September 18, 2024.

---

[1]. Defendant's *Plea To The Jurisdiction and Motion For Summary Judgment*, Exh. A, Declaration of Matthew Chustz, ¶31, 32; Exh. A-15; Board Report at 2.

13.     There is no Scheduling or Docket Control Order in place.

## VII. ADMINISTRATIVE EXHAUSTION

14.     Pursuant to the Texas Local Government Code, the City of Austin is required to develop rules and likewise appoint the "Austin Firefighter's, Police Officer's and Emergency Medical Services Personnel Civil Service Commission (the "Commission"). In turn when there is a contested issue of whether or not a police officer is mentally fit, the Commission appoints a specially constructed *Board* to address the issue. Here the Board convened and issued a final determination that Vera was unfit; *see* Section 143.081(d) and permits him to file a complaint in federal court. Section 143.015. This is without the need for any internal appeal with the *Commission*.

## VIII. STATEMENT OF FACTS

15.     Plaintiff incorporates by reference as if fully set forth here his own *Motion For Summary Judgment* and the Defendants own *Plea To The Jurisdiction and Motion For Summary Judgment* and all the exhibits attached therein.

A.     ABOUT PLAINTIFF

16.     Plaintiff was born in February of 1979. He was born in Oceanside, California, and his family moved to Austin when he was about eleven years old. His father was a Marine who served in Vietnam and his mother worked as an administrator in the military as well. He served in the military and was stationed in Afghanistan from 2003- 2005 as a combat controller in the Air Force. He has noted some occasional mild symptoms of Post-Traumatic Stress Disorder. He was discharged from the military honorably and with a partial physical injury which he incurred during his service. He currently resides in Austin with his wife and two children.

He has no history of inpatient psychiatric hospitalizations or intensive outpatient programs treatment. He has no history of alcohol or drug abuse, has no active medical problems nor is he taking any prescription medications..[2]

17. Plaintiff joined the Austin Police Department in or around 2011 as a cadet. Plaintiff served as a police officer for approximately eleven (11) years before being terminated in or around August of 2022. During his time as a police officer, Plaintiff earned multiple awards and accolades for his excellent service to the Austin community. The record reflects there were never any formal complaints or concerns raised about Vera's mental fitness or ability to perform core functions as police office in Austin until he filed a complaint.[3]

18. His employment was regulated by the "Firefighter's, Police Officer's and Emergency Medical Services Personnel Civil Service Commission" which governs the promotion, suspension, and termination of Austin fire fighters, police officers, and EMS personnel in accordance with the Civil Service Act and other rules and regulations.[4]

B. ABOUT THE CITY OF AUSTIN AND THE AUSTIN POLICE DEPARTMENT

19. The City of Austin is located in Austin, Travis County, Texas. The Austin Police Department is headquartered at 715 E 8th Street, Austin, Texas 78701. The Department presently employs approximately 2,500 personnel, including approximately 1,800 police officers. The Austin Police Department is one of many departments run by and overseen by

---

[2]. VERA 0046.

[3]. If there we such a record the City of Austin surely would have included them in their own *Motion For Summary Judgment*.

[4]. Ex. A, Declaration of Matthew Chustz, ¶4.

the City of Austin.   .

C.    STATE LAW

20.    Chapter 143 of the Texas Local Government Code address the rights and duties of police officers in the State of Texas.  It provides for a local "Fire Fighters' and Police Officers' Civil Service Commission" (the "Commission") to administer this chapter in accordance with its purpose.  It is uncontroverted that the City of Austin must follow the requisites of this statute.  Section 143.006 set ups the criteria to appoint members to the Commission who may initiate an inquiry, or an investigation and make certain findings. Section 143.009. Section 143.051 addresses under what causes, a certain disciplinary action could  affect a police officer's employment status so as to initiate a Commission inquiry or investigation.

21.    Section 143.010 sets  forth a very specific appeal process where a police officer disagrees with a Commission Decision.  That process requires a full hearing on the merits before an aggrieved officer can seek a remedy in state court.  Mental fitness is not one of the considerations listed in Section 143.051.  Rather, mental fitness is contemplated by Section 143.081 meaning both the inquiry, investigatory, decision-making and hearing and appeal does not apply where mental fitness is a concern.

22.    Section 143.081 permits the Commission to appoint a panel of three mental health professionals to assess whether or not a police officer is mentally fit to maintain employment. When this panel (or Board as it might be called locally) makes a decision as to fitness, the decision is final. Accordingly, an officer who is aggrieved may go directly to district court to seek a remedy, as long as its done within ten (10) days of notice of the final decision. Section 143.015.  Those remedies include but are not limited to reinstatement, attorneys fees,

court costs and lost wages.

D.    CITY RULES AND REGULATIONS

1.    Municipal Civil Service Rules

23.    The City of Austin Promulgated Municipal Civil Service Rules Of The City Of Austin (Civil Service Rules") .[5]

24.    *Civil Service Rule* 6 contemplates Disciplinary Actions, with Rule 6.03 delineating a significant list of factors that go into the administration of a disciplinary action against a police officer. They include but are not limited to providing for a corrective action plan, and examining an officer's past conduct and mitigating factors.  Before an action is final an aggrieved police officer has a number of procedural rights (Rule 7) at his disposal to contest any finding including a *Hearing* before the relevant City Commission.  Issues of mental fitness are not addressed in the Civil Service Rules meaning none of the rights provided other City of Austin employees in this area afforded to a police officer who is being assessed for mental fitness.

2.    Civil Service Commission Rules And Regulations

25.    The City of Austin has promulgated *The Firefighter', Police Officers And Emergency Medical Services Personnel's Civil Service Commission Rules And Regulations* ("the Commission Rules").[6]  Commission Rule 4.04 requires the Commission to follow the requisites of the Texas Open Meetings Act.

26.    Commission Rule 10 contemplates a long list of reason for which a police officer could be

---

[5].  Plaintiff asks the Court to take Judicial Notice of this public document.

[6].  VERA 0082- 1025.

suspended. It does not include mental fitness issues. Those are contemplated by Rule 15, which incorporates by reference Chapter 143.81 of the Local Government Code.

27. Commission Rule 14, provides a police officer who has been an object of criminal indictment, even a felony a full array of actions from nothing, to a temporary suspension, to a disciplinary action or dismissal. For a police officer who is being assessed for mental fitness he does not even have the rights and remedies a felon has.

### 3.    Police Department General Orders

28. Separately, the Police Department has promulgated what they call *General Orders*.[7] General Order 958.3 states the "the Department will engage in a good faith interactive process to consider *reasonable accommodations* for any employee with a temporary or permanent disability. Order 958.3( c) further notes that if an officer is deemed mentally unfit, General Order 958.3(1(d); (2)(a) *shall* apply. Among other things, an aggrieved officer has a right have a physician provide a written report on if, and if so when, and under what conditions a police officer may return to work.

29. General Order 958.3.1(d)(3) even more specifically requires the City to officer deemed mentally unfit for duty the right to participate into a *Return To Work Program* ("RTW"). This *Order* also requires the City to offer an officer deemed mentally unfit for duty the right to have their situation reviewed by City Of Austin American with Disabilities Act ("ADA") Committee.

### E.    VERA'S EARLY HISTORY WITH THE POLICE DEPARTMENT

30. In 2011, Plaintiff entered into the Austin Police Department as a cadet. Eventually, Plaintiff

---

[7]. Ex. C, Declaration of Henderson, ¶6-14;  Ex. C-1; C-2; C-3;

was assigned to the evening patrol shift in the Baker Sector—an area in Central West Austin. Plaintiff worked the evening shift for approximately five years. Plaintiff also served as a Mental Health Officer, responding to incidents of mental health distress in the community.

31.   In and around 2017 Plaintiff began to experience what he perceived as harassment at work. He became anxious and could not sleep or eat normally for a few days.  He was concerned about reputation at work, and that one of his supervisors was spreading false, damaging rumors about him to his co-workers. He subsequently requested a shift change from the day shift, back to the night shift, so as to avoid working with those persons antagonistic to him. He also began counseling to address the stress he was experiencing.  He also resigned rom the Mental Health Officer position, though he otherwise maintained all regular police officer duties.

32.   At no point from 2011 to August of 2021  was there any concerns about Plaintiff's mental health. Nor was there ever any concern about Vera's ability to serve as a policeman. Sadly that changed after he filed a formal complaint with the APD.

F.   PLAINTIFF FILES A COMPLAINT AND EXPERIENCES RETALIATION

33.   On or about August 7, 2021, Vera filed a complaint with the APD Internal Affairs Department, detailing a number of concerns.  He noted the lack of support provided by supervisory and management staff, a lack of concern for both his physical and mental well-being and his fellow officers, under investigation of alleged criminal activity in minority communities. Many of his concerns were underscored in a published survey of Austin Police Officers.[8]

---

[8]. IA Complaint, Ex. 1 to P's MSJ, at p. 2/9; Vera MSJ at p. 2/19; VERA0002- 0006; 0073- 0080.

Amended Complaint                                                                                        9

34.   Instead of investigating his complaint, or speaking with any of his fellow officers or supervisors about Vera's actual job performance, the IA passed their concerns about Vera's mental fitness on to Chief Chacon. So on August 18th, days just after filing this IA complaint, Police Chief Joseph Chacon sent Vera a memo ordering him to submit a report to the Commission from his personal treatment provider.  The report was to address whether or not he was sufficiently mentally fit to continue his duties as a police officer pursuant to section 143.081(b) of the Civil Service Act. A questionnaire was sent to his treatment provider and expected to be filled out.[9]

35.   The memo further noted that if Chief Chacon questioned Vera's personal doctor's report, the Civil Service Act permitted him to request the Commission appoint a different doctor.  That person was likewise required to examine Vera and submit a report concerning his whether or not Vera was mentally fit for duty.[10]

36.   The Commission had a regularly scheduled meeting on November 1st to appoint a physician, psychiatrist or psychologist to examine Vera.  Vera was never given notice of this meeting. Worse yet, his name shows up in the publically available *Minutes* of the meeting as the object of the need for a mental health examination.[11]

1.   The First Psychological Evaluation Finds Vera Fit For Duty

37.   Vera completed a psychological evaluation, with Dr. Darla D. Absher, PsyD, LPC-S, on or

---

[9]. Ex. A, Declaration of Matthew Chustz, ¶17, Ex. A-1, August 18, 2021, APD Memorandum at 1–2; VERA 0008- 0009; VERA 0019.

[10]. Ex. A, Declaration of Matthew Chustz, ¶17, Ex. A-1, August 18, 2021, APD Memorandum at 2.

[11]. VERA 0021, OO222.

about September 17th. Dr. Absher indicated that Plaintiff was psychologically fit for duty without any limitations on his duties.[12]

2.    The Retaliation Continues

38.    On or about October 15th Chief Chacon questioned Dr. Absher's report and requested the appointment of a physician to conduct an independent evaluation. The Commission ordered Dr. Stephen Thorne to evaluate Vera to determine whether he was fit for duty.[13]

2.    The Second  Psychological Evaluation Finds Vera Fit For Duty

39.    In or around December 2021, Dr. Stephen A. Thorne, Ph.D., Licensed Psychologist completed his evaluation.  Dr. Thorne determined that Plaintiff was presently fit for all duties as a police officer. Dr. Thorne acknowledged that in or around 2017, Plaintiff may have experienced a mental health crisis, but there was nothing evidencing a compromised mental health state or inability to work as a police officer.[14]

40.    In his well-reasoned inquiry and three page report of December 24, 2021, Dr. Thorne spoke with Sergeant Joshua Dozier and Corporal Javier Bustos, both who worked closed with Vera, as well as Tania Glenn, LCSW (a former Therapist) as well as Dr. Absher.  He administered the Minnesota Multiphasic Personality Inventory-3 (MMPI-3) a commonly used and empirically supported psychological test and the Adult Self- Assessment Inventory.  The following portion of his report is noteworthy:

---

[12]. Ex. A, Declaration of Matthew Chustz, ¶18, Ex. A-2, Initial Completed Personal Physician Checklist; VERA 0012- 0017.

[13]. Ex. A, Declaration of Matthew Chustz, ¶19; Ex. A-3, October 15, 2021, APD Memorandum;  ¶20, Ex. A-4, November 1, 2021, Order of the Commission.

[14].  Ex. A, Declaration of Matthew Chustz, ¶21, Ex. A-5, Dr. Thorne Report at 3.

Amended Complaint                                                                                            11

"Mr. Vera was dressed appropriately .... displayed no obvious deficits in hygiene. [was] oriented to person, place, day, date and year... [had] appropriate eye contact [and] his mood was appropriate... There was no evidence of psychomotor retardation or ... evidence of bizarre or peculiar thoughts patterns or perceptual distortions. ...

While Dr. Thorne noted his lack of familiarly with Vera' complaint and its objective veracity, he gave great weight to the discussions he had with Sergeant Dozier and Corporal Bustos. Specifically each reported that:

"over the course of their work-related relationship with him (... and has seen Mr. Vera numerous occasions over the period of several months) did not express *any* (emphasis added) concerns relating to Mr. Vera's current psychological functioning and/or his (then) present 'fitness for duty' as a police officer with the Austin Police Department. In short, it is this examiner's opinion that Mr. Vera is presently fit to perform his duties as a Austin Police Officer.[15]

Chief Chacon did not question this report and Vera continued to work as ploce offier with the APD without incident.

3.      Vera Is Interviewed By Internal Affairs

41.    Now six moths after making a complaint, and after two evaluations find him for for duty, Vera, on or about February 7, 2022 , is interviewed by the Internal Affairs Department. Afterwards he continued working his regular patrol duties at this time. The investigators reported their concerns up through the chain of command, and then on to Chief Chacon about Vera's fitness for duty.[16]

42.    On February 11, 2022, Chief Chacon reported these concerns to Vera in another memo. He again questioned Vera's fitness to continue his duties as a police officer. Starting a new

---

[15]. VERA 0024- 0026.

[16]. Ex. A, Declaration of Matthew Chustz, ¶ 22, Ex. A-6, February 11, 2022, APD Memorandum at 1; ¶22, Ex. A-6, February 11, 2022, APD Memorandum at 2.

round of retaliation, and as before, Chacon requested Vera submit a report from his personal doctor pursuant to section 143.081(b) of the Civil Service Act.[17]

4.      The Third Psychological Evaluation Finds Vera Fit For Duty

43.    On the same day, Vera again saw Dr. Absher, who quickly determined that he was mentally fit for duty.[18]

G.    THE POLICE CHIEF REFERS VERA'S CASE TO THE CIVIL SERVICE COMMISSION

1,      The Commission Is Notified, Meets And Violates Vera's Rights

44.    About six days later, Chief Chacon notifies the Director of the Commission that he questioned Dr. Absher's second report and requests that the Commission appoint another doctor to conduct another independent evaluation as to Vera's alleged unfitness for duty. During this time, Plaintiff was assigned to taking 3-1-1 phone calls, a desk job.[19]

45.    At 10:00 a.m. on March 7th employees of the Commission and Office of the City Clerk posted on the Commission's public website a meeting agenda for a March 10, 2022, Special Called Meeting of the Commission to be held at 10:00 a.m.[20]  Vera was never given notice of this meeting.[21]

46.    At 10:00 a.m. on March 10th the Commission convened the Special Called Meeting to

---

[17].  Ex. A, Declaration of Matthew Chustz, ¶ 22, Ex. A-6, February 11, 2022, APD Memorandum at 2.

[18].   Ex. A, Declaration of Matthew Chustz, ¶ 23, Ex. A-7, Second Completed Personal Physician Checklist; VERA 0032- 0038.

[19].  Ex. A, Declaration of Matthew Chustz, ¶24, Ex. A-8, February 17, 2022, APD Memorandum; VERA 0028- 0030; vera 0040- 0041.

[20].  Ex. B, Declaration of Michael Sullivan, ¶5, 6, 8, Ex. B-1, BCIC Screenshot.

[21].  Vera MSJ at p. 5/19.

Amended Complaint                                                                                                    13

consider Chief Chacon's request to appoint another doctor to again evaluate Vera's fitness. Two Commissioners were in attendance—Eyna Canales-Zarate and Farah Ahmed. At the meeting, Canales-Zarate raised a motion to approve the appointment and Ahmed seconded it. The motion therefore passed 2–0. The recorded minutes misstated that "Civil Service Commissioner Chair Thomas" called the meeting to order.[22]

47.    Once again, Vera was never given notice of this meeting. And once again, his name shows up in the publically available *Minutes* of the meeting as the object of the need for a mental health examination.[23]

2,    The Fourth Psychological Review Finds Vera Unfit For Duty

48.    On April 24th the Commission-appointed a medical doctor, Dr. Leonard Weiss M.D. to examine Vera. He completed a brief social history review but he did not speak with Dr. Absher, Dr. Thorne or any of the fellow officers who worked with Vera. He did note there were no complaints against Vera or any actual job-related concerns. He did not perform any independent medical, psychiat6ric or psychological testing. He received a (bank) copy of the *Essential Functions Form* from the Commission but did not fill it out. Nevertheless he opined, and without any specificity, that Vera could not perform certain functions and found unfit for duty. It is absolutely noteworthy that Dr. Weiss noted the limitations in his evaluation and stated that "diagnostically it would be beneficial for Officer Vera to have (complete) medical by a board-certified internal medicine physician, and a neurological work

---

[22], Ex. A, Declaration of Matthew Chustz, ¶7, 25, Ex. A-9, March 10, 2022, Original Meeting Minutes at 1, 2; Vera 0043- 004.

[23]. VERA 0043- 0044.

up by a board-certified neurologist including necessary blood or radiological tests."[24]

3.    The Civil Service Commission Meets And Violates Vera's Rights

49.    On May 3rd the Commission noted that Dr. Absher's second report and Dr. Weiss's report conflicted with each other. Pursuant to section 143.081(d) of the Civil Service Act, the Commission appointed an independent three-member board of psychologists to evaluate Vera's fitness for duty. The board initially consisted of Dr. Ronnette Ballard, Dr. Krista Jordan, and Dr. Elizabeth Levy, with Dr. Ballard as lead psychologist.[25] On May 11th Levy withdrew from the board so the Commission issued a new order on June 6th replacing her with Dr. Melissa Siebert. None are physicians or psychiatrists, nor display any history of working with former military veterans or specialists in PTSD.[26]

50.    Once again, Vera was never given notice of this meeting. And once again, his name shows up in the publically available *Minutes* of the meeting as the object of the need for a mental health examination.[27]

51.    In the June 6th order, the Commission ordered Vera to provide his consent to permit Dr. Ballard "to communicate with the Commission and any other medical professionals involved in the appeal for hiring process." Dr. Ballard alone was granted this authority, and no one else[28] but she did not follow this order. Nor did the Commission follow Dr. Weiss

---

[24]. Ex. A, Declaration of Matthew Chustz, ¶ 27, Ex. A-11, Dr. Weiss Report; VERA 0046.

[25]. Ex. A, Declaration of Matthew Chustz, ¶28, Ex. A-12, May 3, 2022, Order of the Commission.

[26]. Ex. A, Declaration of Matthew Chustz, ¶12, 29, Ex. A-13, June 6, 2022, Order of the Commission.

[27]. Vera MSJ at p. 5/19; VERA 0049- 50.

[28]. Ex. A, Declaration of Matthew Chustz, ¶13; 29, Ex. A-13, June 6, 2022, Order of the Commission.

recommendations that "diagnostically it would be beneficial for Officer Vera to have (complete) medical by a board-certified internal medicine physician, and a neurological work up by a board-certified neurologist including necessary blood or radiological tests."

52. At the onset Dr. Ballard had some questions as to whether or not some of the concerns that Vera had expressed to the IA Investigators actually occurred. The concern was that Vera could be experiencing psychosis. Dr. Ballard actually spoke with Dr. Absher about this concern, and told her the event had been reported in the news. After this conversation she asked for the entire Board to meet with Dr. Absher, but that was denied.[29] Instead, Dr. Ballard then asked Matthew Chustz, the Municipal & Civil Service Manager in the Commission, if the entire board of psychologists could ask Dr. Absher questions about her conclusions. Dr. Ballard mistakenly asked Chustz to contact with Dr. Absher. Chustz who then collected and compiled from the board a list of four questions[30] that all three members supposedly wished to asked Dr. Absher and forwarded them to her.[31]

53. One of the questions had to do as to whether one or more of the concerns that Vera had expressed to the IA Investigators actually occurred inferring that Vera had some form of psychosis. Dr. Ballard actually spoke with Dr. Absher about this concern and told Ballard that the event had been reported in the news.

54. All three board members interviewed Vera himself during the evaluation process. They

---

[29]. Vera MSJ at p. 6/19.

[30]. Ex. A, Declaration of Matthew Chustz, ¶15, 30, Ex. A-14, Board Questions.; VERA 0071. One was question asked Absher was if she knew that Vera had filed a complaint against her. It as false he never made such a complaint. Vera MSJ at p. 7/19.

[31]. Ex. A, Declaration of Matthew Chustz, ¶31, Ex. A-15, Board Report.

reviewed all the previous reports but did not speak with Sergeant Dozier or Corporal Bustos or any of his fellow officers.  They did not complete their own checklist.[32]  On or about July 26, 2022, the Civil Service Commission issued a written board opinion, determining that Plaintiff was not fit to serve.  He was given notice of the decision on the 29th.[33]

55.    On August 7th Chief Chacon sent Vera a communication August 17, 2022.  There he noted the three-member  Board, appointed by the Civil Service commission, pursuant to Texas Local Government Code 143.081(d) unanimously found him too be unfit for duty.  That decision was final.[34]

H.    AFTER VERA WAS TERMINATED

56.    On or about August 23, 2022, Plaintiff contacted the APD Human Resources ("HR") Department to confirm his employment status. The HR Department indicated that Plaintiff's file indicated that he had been "terminated." Plaintiff also obtained a file of his employment file from the Texas Workforce Commission, which also indicated that he had been "terminated" from the APD. On or about September 1, 2022, Plaintiff's Personnel Action Form ("PAF") was purportedly filed with the Austin Police Retirement System, so that Plaintiff could begin receiving unemployment and retirement benefits. However, Plaintiff discovered that the PAF was never signed by a supervisor as required..[35]

57.    On or about May 18, 2023, Plaintiff received a new copy of his employment file from the HR

---

[32]. Ex. A, Declaration of Matthew Chustz, ¶ 31, Ex. A-15, Board Report; VERA 0053-0054.

[33].  Ex. A, Declaration of Matthew Chustz, ¶31, Ex. A-15, Board Report.

[34].  Ex. A, Declaration of Matthew Chustz, ¶ 33, Ex. A-17, Termination Memorandum; VERA 0056

[35].  Vera MSJ, p. 8/19; VERA 0059- 0060, 0062, 0067.

Department. However, all of the files in this new copy indicated that Plaintiff had "resigned" from his position with the APD and had not been terminated. The copy of this file did not contain the unsigned PAF, nor did it contain Plaintiff's original termination memoranda from Chief.[36]

58.    Vera is still unemployed.

I.    THE FAILURES OF THE CITY OF AUSTIN

1.    Failure To Follow The Requisites Of The Open Meetings Act

59.    The Texas Open Meetings Act requires that the person who is the object a public institutions meeting about him, be given notice of said meeting in a timely manner. Vera never received such notice for any of the various Commission Meetings addressing his situation.

60.    The Texas Open Meetings Act requires that persons who are the object of mental fitness concern, have their confidentiality maintained.  The records evidence that did not occur.

2.    The Failures Of The Commission

61.    The Commission never appointed a Board Certified Internal Medicine Physician as suggested by Dr. Weiss.

62.    The Commission never appointed a Board Certified Neurologist to evaluate Vera as suggested by Dr. Weiss.

63.    The Commission never required Vera have blood work done as suggested by Dr. Weiss.

64.    The Commission never required Vera have a radiological exam as suggested by Dr. Weiss.

65.    The Commission did not appoint a Psychiatrist to be on the Board to assess Vera' mental fitness.

---

[36]. Vera MSJ, p. 9/19; VERA 0069.

3.      The Failures Of The Board

66.   The Board failed to request Vera see a physician to rule out medical conditions as a possible cause of Vera' alleged mental health issues, as required by professional rules.

67.   The Board failed to deal with Vera's doctor directly as ordered by the Commission and instead had a non-neutral City Of Austin employee, Matthew Chutz, handle all communications.

68.   The Board failed to let Vera know about the questions to be asked of his doctor.

69.   Chutz aasked Dr. Ansher about whether or not she knew Vera filed a complaint against her, that was not relevant, was false and was intended to contaminate the process.

70.   In regard to Commissions' appointment of a Board to assess Vera's mental fitness: The Board failed to call Sergeant Dozier, Corporal Bustos or any other person who worked with Vera.

71.   The Board failed to consider whether not Vera's (so-called) condition was temporary of permanent.

72.   The Board failed to consider the fact Vera had no prior disciplinary record.

73.   The Board failed to consider the fact Vera had received a number of commendations.

74.   The Board failed to consider a decision or recommendation that considered something less final than termination.

4.      The Failures Of the City Of Austin

75.   The failure to have an IA process free of retaliatory motive.

76.   The failure of the City to consider providing Vera any reasonable accommodation so that he could remain on a job with City in some capacity.

77.   The failure to provide Vera notice of his appeal rights.

78.   The failure to give Vera notice of his right to participate in a Back to Work Program.

79.   The failure to let Vera know he had a right to have the Board decision reviewed by an ADA Committee.

80.   The failure to provide Vera notice of his rights under retirement law.

## IX.  STATE ACTION

81.   Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth and each paragraph below incorporates by reference also as if fully set forth herein, the ones above it.

82.   At all relevant and material times the Defendant District was a recipient of federal funds, and was a public facility as contemplated federal and state law.

## X.  CONSTITUTIONAL CLAIMS

83.   Vera claims his right to *Due Process of Law* as contemplated by Article 1, Section 13 and his right to *Due Course Of Law* as contemplated by Article 1, Section 19, both of the Texas Constitution were violated by the acts and omissions of the City of Austin of which he may seek a full array of relief and remedy.

## XI.  CLAIMS OF VIOLATIONS OF THE LOCAL GOVERNMENT CODE

84.   Vera alleges the acts and omission of the City of Austin, as noted above, violated Chapter 143 of the Texas Local Government Code. which permits him to seek his job back, back pay and related items.

## XII.  CLAIMS OF VIOLATIONS OF THE TEXAS OPEN MEETINGS ACT

85.   Vera alleges the acts and omission of the City of Austin as noted above violated the Texas

Open Meeting Act, *see* Texas Government Code, Chapter 551.

86.    An action taken by such a governmental entity in contravention of this Act is "voidable." *See* Section 551.141.  Furthermore any person may bring an action in court seeking equitable relief, including reversal of a decision made by governmental entity in violation of the Open Meetings Act. Accordingly, Vera also seeks attorneys and costs.

## XIII.  CLAIMS PURSUANT TO THE TEXAS HUMAN RESOURCES CODE

87.    Chapter 121 of the Texas Human Resources Code creates duties for public entities like the City of Austin not to discriminate against a person with a disability.  Those duties generally include the "duty to make reasonable accommodations in policies, practices and procedures." Texas Human Resources Code §121.003(d)(2).  The failure to do so creates a private cause of action for that person, pursuant to Texas Human Resources Code §121.004(b). Accordingly, the aggrieved party may seek attorneys fees and equitable relief.

88.    Vera contends that by failing to offer him accommodations while employed by the City of Austin and Austin Police Department, the Defendant violated his rights as a person with a disability, and violated the Texas Human Resources Code thereby. Accordingly, he has a right to equitable relief including but not limited to his job back with necessary accommodations and back pay,

## XIV.  CLAIMS PURSUANT TO TITLE VII

89.    Vera contends that the Defendant violated his rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. ("Title VII") in a number of manners and particulars as noted above. Specifically, and among other things, he was a of victim retaliation for filing a complaint with the APD; was mistreated as a person with a perceived mental health

disability, that the Defendant failed to accommodate said disabilities, experienced a hostile work environment, was ultimately terminated and experienced an adverse employment action thereby.

### XV.  CLAIMS OF DISCRIMINATION BASED UPON DISABILITY

90. Vera contends that his rights were violated by the Defendant pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 as the Defendant failed to reasonably accommodate his disability. Additionally and in the alternative, Plaintiff contends that he was the victim of disability discrimination pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12131, et seq. here again Plaintiff contends that the Defendant failed to reasonably accommodate his disability.

91. Last and as to both the Rehab Act and ADA Vera has a separate claim he was a victim of retaliation based upon his self-advocacy.

### XVI.  ALTERNATIVE CLAIMS FOR RELIEF AUTHORIZED

92. Vera intends to exercise his right to plead multiple causes of action in his Amended Petition and invoke the right of disparate pleadings set out in Texas Rule of Civil Procedure. Where, in this pleading or any supplemental or amended pleadings, the statements of claims vary, they are to be construed as alternative claims for relief. No claim for relief shall be construed as waived or abandoned where it is otherwise contradicted in whole or in part in another portion of this pleading.

### XVII.  RATIFICATION AND RESPONDEAT SUPERIOR

93. The City of Austin, by and through the Austin Police Department ratified the acts, omissions and customs of Police Department employees.

94. Additionally, the City of Austin is responsible for the acts and omissions of the Austin Police Department pursuant to the theory of *Respondeat Superior*.

## XVIII. SPOLIATION

95. Plaintiff hereby requires and demands that the City of Austin preserve and maintain all evidence pertaining to any claim or defense related to violations, causes of action, facts, and resulting damages set forth herein and/or made the basis of complaint, including, but not limited to, statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence, potential evidence, or potentially discoverable documents.

96. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation inference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XIX. DAMAGES

97. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered injuries and damages, for which she and her parent are entitled to recover including but not limited to:

a.  Nominal damages;

b.  Medical expenses in the past;

c.  Mental anguish in the past;

d.  Mental anguish in the future;

    e.       Mental health costs in the past;

    f.       Mental health costs in the future;

    g.       Loss of opportunity;

    h.       Loss of income;

    i.       Stigma;

    j.       Miscellaneous out-of-pocket costs; and

    k.       Reasonable Attorneys fees and costs;

98.    More over Vera claims *Equitable Relief* including but not limited to:

    a.       reversal of any acts of the Commission violating the Open Meetings Act;

    b.       reinstatement of his job with full benefits;

    c.       reimbursement of past income he should have otherwise received;

    d.       reimbursement for past monies that should have gone into his retirement account; and

    e.       reimbursement for other out-of-pocket expenses and for such other relief that he may be afforded by a jury.

99.    Moreover, as the precise amount of Plaintiff's damages are unknown at this time, but that said, damages are within the jurisdictional limits of this Court, and upon trial by jury, Plaintiff should be awarded fair and reasonable damages as determined by the jury.

## XX.  EXEMPLARY DAMAGES

100.    The acts and/or omissions of the Defendant described above were of such a character as to make Defendant guilty of gross negligence. The conduct of Defendant, viewed objectively from the standpoint of the Defendant at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others.

Moreover, the Defendant engaged in the conduct with conscious indifference to the rights, safety and/or welfare of others, despite the Defendant's actual, subjective awareness of the risk involved. Therefore, Plaintiff is entitled to recover exemplary damages and seek exemplary damages in an amount that may be found by the trier of fact that is sufficient to deter this type of conduct in the future.

## XXI.  U.S. LIFE TABLES

101.    Plaintiff hereby notifies all parties of his intent to use, in the Trial by Jury of this matter, the U.S. Life Tables as published and promulgated by the United States Department of Health and Human Services

## XXII.  PRE-JUDGMENT AND POST-JUDGMENT INTEREST

102.    Plaintiff pleads for an award of pre-judgment and post-judgment interest upon entry of a final judgment for Plaintiff in this cause.

## XXIII.  JURY DEMAND

103.    Plaintiff requests that a jury be convened to try the factual issues in this cause. Plaintiff has paid the jury fee.

## XIV.  OBJECTION TO VIRTUAL JURY TRIAL

104.    Pursuant to Tex. R. Civ. P. 21d, as well as pursuant to Plaintiff's U.S. and Texas Constitutional rights to a trial by jury, Plaintiff objects to a final trial by jury in this matter being  conducted virtually and/or by remote means. Plaintiff does not object to the appearance of witnesses  by remote means at final trial by jury provided the parties agree to such a virtual appearance or the  Court enters an order allowing the appearance. Plaintiff objects to any named party appearing by remote means in this matter absent an agreement

of the parties to such an appearance or the Court enters an order allowing the appearance. Plaintiff demands an in-person trial by jury of this cause.

## XXV.  <u>OBJECTION TO VISITING JUDGE</u>

105.   Plaintiff objects to the referral of any matter in this cause to a visiting judge, including but not limited to hearing of any matter, a trial on the merits, or presiding at a jury trial.

## XXVI.  <u>OBJECTION TO ASSOCIATE JUDGE</u>

106.   Plaintiff objects to the referral of this case to an associate judge for hearing a trial on the merits or presiding at a jury trial

## <u>PRAYER</u>

Plaintiff further prays for judgment against the Defendant in the manner and particulars noted above, damages and in an amount sufficient to fully compensate Plaintiff for the elements of injuries enumerated herein, equitable relief as permitted by law, and for such other and further relief as the Court may deem just and proper in law, equity, or both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Texas Bar No. 00783829
Marty@cirkielaw.com [Email]

Julianna S. Swann
Texas Bar No. 24130061
julianna@cirkielaw.com [Email]

Cirkiel Law Group, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
REPRESENTATIVES FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this the 5th day of September, 2024, I have served a true and correct copy of the foregoing document on all parties and/or their attorneys of record in compliance with the Texas Rules of Civil Procedure and the Local rules of Travis County.

Mr. Darren Gibson, Attorney
Texas Bar No.: 24068846
dgibson@littler.com [Email]
Mr. Josh Ordiway, Attorney
Texas Bar No.: 241265538
jordiway@littler.com  [Email]
Littler Mendelson P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 982-7250 [Telephone]
(512) 982-7248 [Facsimile]

/s/ Julianna S. Swann
Julianna S. Swann