## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ANDREW PAUL VERA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. No. 1:24-CV-1158-RP** |
| | § | |
| **CITY OF AUSTIN,** | § | |
| **Defendant.** | § | |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT

NOW COMES Andrew Paul Vera ("Plaintiff" hereinafter) and files this his *Motion For Partial Summary Judgment* and in support, thereof respectfully shows this tribunal the following:

### I.  BRIEF INTRODUCTION TO THE CASE AND THIS MOTION

1.    As the Court well-knows the City of Austin ("the City") by and through what is termed *City of Austin Firefighters' & Police Officers' Civil Service Commission* ("the Commission") initiated a proceeding, pursuant to Texas Local Government Code, Section 143.081, to determine whether or not Andrew Vera was fit to continue in his duties.  The City and the Commission admittedly[1] follows all the requisites of the Texas Open Meetings Act, set at Chapter 551, of the Texas Government Code ("hereinafter referred to as "TOMA" or "the Act").  This includes notice requirements set forth in Sections 551.041 [date, hour, place and subject matter]; 541.043 [notice must be written and posted in a public spot 72 hours before the meeting]; and 551.050 [physically posted at City Hall].  The record reflects that the City and Commission had a number of Meetings subject to TOMA where they issued *Orders* and failed to follow the notice requirements of the Act, including and especially the last Meeting

---

[1]. Exh. 6-4, p. 49, 61/255.

of June 6, 2022 [DE# 6-4, p. 133/255] where the Commission ordered the constitution of a Board of three (3) psychologists to determine whether or not Vera was fit or unfit to work as a Police Officer. Accordingly, any and all such *Orders* by the City and Commission are voidable, as are the derivative actions and decisions made by the Board pursuant to such infirm *Orders, see* Section 551.141. Vera asks the Court to void all the decisions and *Orders* made by the City and Commission in contravention of the notice requirements of the Act and by extension, the Decision of the Board that found him unfit to serve as a Police Officer. Additionally, to find voidable the derivative decision by Police Chief Chacon terminated his employment. Plaintiff seeks attorneys' fees and costs, as well as back wages pursuant to Local Government Code 143.015(d).

## II. EVIDENCE CONSIDERED

2.      First, Plaintiff relies upon all the statements and arguments provided by the Defendant in all their own pleadings filed in this cause, which evidence is deemed admitted and is self-authenticated. *See also* FED. R. CIV. P. 26. This includes but is not limited to Defendant's *Plea To The Jurisdiction and Motion For Summary Judgment* [DE# 6-4, p. 56-191-/255] filed by the City and the exhibits attached thereto. Heath v. Board of Supervisors for the S. University Agric. & Mech. College, 850 F3rd 731 (5th Cir. 2017).

3.      Plaintiff provides his own pleadings and evidence The first is found in the State Court records [DE#6-3, p. 2-150/150]. He also adds his own Declaration with attachments of the various Agendas and Minutes (Exh. A, A-1 through A-10). Plaintiff also adds certain Commission Orders, not already part of the record.

## III. STATEMENT OF FACTS

4.  Andrew Vera was hired by the City of Austin Police Department on or around 2011. [ Exh. A, Declaration of Vera, par. 2.]  Like his colleagues Vera has substantive and procedural rights to continued employment set by the Texas Local Government Code, Chapter 143; the City of Austin Fire Fighters', Police Officers' and Emergency Medical Services Personnel's Civil Service Commission Rule and Regulations. [DE# 6-4, 149- 153/255; DE# 6-3, p. 107- 150/150] as well as by Austin Police General Orders. [DE# 6-4, p. 164- 190/255].

5.  On or about August 7, 2021, Vera filed a complaint with Internal Affairs. [DE# 6-3, p. 27- 31/150].  On August 18th Police Chief Joseph Chacon sent Vera a memo ordering him to submit a report to the Commission from his personal treatment provider, Dr. Darla Absher, PsyD, LPC.  The report was to address whether or not he was fit to continue his duties. A questionnaire was sent to Absher to be filled out. [DE# 6-3, p. 33- 34/150].  Vera completed a psychological evaluation and questionnaire who on or  about September 17th indicated he was fit for duty without any limitations. [DE# 6-3, p. 36- 43/150].

6.  The City what is called the Civil Service Office ("CSO") in their Human Resources Department.  The CSO is the liaison with the Commission.  The Commission regulates the promotion, suspension, and termination of Austin firefighters, police officers and EMS personnel and issues *Orders* in accordance with the Texas Local Government Code and other rules and regulations. The CSO acts on behalf of the Commission by functioning as the Commission's administrative and ministerial support.  During the relevant period of this case, Matthew Chutz was the liaison between the CSO and Commission. [DE# 6-4, p. 75- 76/255].  The City has a Board & Commission Information Center ("BCIC") that posts upcoming City of Austin and Commission Meetings on a website. [DE# 6-4, p. 156/255].

7. On or about October 15th Chief Chacon questioned Dr. Absher's report and requested the appointment of another professional to conduct an evaluation. [DE# 6-3, p. 44/150]. The Agenda reflects the Commission had a *Regularly* scheduled meeting on Monday, November 1st at 10:00am where they regularly held business- the Learning & Research Center at 5202 E. Ben White, Bldg. 500, Room 249, Austin, Teas 78741. With regard to public comments, it noted "Citizen Communication: General." As to *New Business,* it noted discussion and possible action to appoint a physician, psychiatrist or psychologist to examine "a police officer" and submit a report to the Commission. Vera's name shows up in the Minutes as the object of the need for a mental health examination. [DE# 6-3, p. 46-47/150]. He was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda for this Meeting was posted within seventy two hours in a public place, where the meeting was held, or at City Hall or on the City's website. If it were posted, Vera believes one of his superiors or colleagues would have told him. [Exh. A, Declaration of Vera at par. 5-6, Att. A-1, Agenda of Nov. 1, 2021].

8. The *Minutes* of the November 1st Commission Meeting reflect that Matthew Chustz, (then) Acting Civil Service Director attended the meeting. No members of the public spoke. The Commission voted to "approve the appointment of a three-member board per Chapter 143.022(c) of the Local Government Code ("LGC") for another mental or physical evaluation. [Exh. A, Declaration of Vera, par. 7, Att. A-2, Minutes of Nov. 1, 2021]. The Commission issued an *Order* that same day but it is different from the *Minutes*. First they write that Chief Chacon requested a physician be appointed. Instead of a three-member board they "voted to appoint Dr. Steven Thorne to evaluate Vera as whether he was fit or not

fit for duty." It did not address whether or not the report was based upon physical or mental health concerns. Of note was that the *Order* stated the Civil Service Director had already retained Dr. Thorne [DE# 6-4, p. 101/255, Exh. B] apparently before the meeting.

9. In or around December 2021, Dr. Stephen Thorne completed his report. He notes that Matthew Chustz was the person who had communicated with him before the Commission met to retain his services. Dr. Thorne, determined Vera was then presently fit. [DE# 6-4, p. 103-105/255].

10. On or about February 7, 2022, Vera was interviewed by the Internal Affairs ("IA") Department. IA reported their concerns up to Chief Chacon about Vera's fitness for duty. On February 11th the Chief requested Vera again submit a report from Dr. Absher, pursuant to section 143.081(b) of the Civil Service Act. [DE# 6-3, p. 53-55/150; 6-4, p. 107- 107/255]. Vera saw Dr. Absher that same day, and she determined he was fit for duty. [DE# 6-3, p. 57- 63/150; 6-4,

p. 111- 117/255]. About six days later, the Chief notified the Commission he questioned Dr. Absher's second report and requested another professional be appointed to evaluate Vera's alleged unfitness for duty. [DE# 6-4, p.119/255].

11. As noted above, the City has a Board & Commission Information Center ("BCIC") that posts upcoming City and Commission Meetings on a website. In light of the Special Called Meeting to be held at 10:00 a.m. on March 10th, Michael Sullivan, Civil Services Coordinator with the Human Resources Department has testified he uploaded an Agenda on 8:55am to the BCIC. Even so, he did not confirm it was actually posted on the City's website in a timely manner or physically posted at all. [DE# 6-4, p. 156- 158/255]. Vera was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda

for this Regular Meeting was posted within seventy two hours in a public place, at City Hall or actually on the City's website.  If it was posted Vera believes one of his superiors or colleagues would have told him. [Exh. A, Declaration of Vera at pars. 8, 9].

12.    On Thursday, March 10th at 10:00am the Commission convened a Special Called Meeting to consider the request to appoint another doctor to evaluate Vera.  The Agenda in regard to public comments notes "Citizen Communication: General." As to *New Business* it notes discussion and possible action to appoint a physician, psychiatrist or psychologist to examine "a police officer" pursuant to 143.081 of the Local Government Code and Rule 15.04 of the Commissions Rules & Regulations. Vera's name shows up in the publicly available Agenda as the object of the need for a mental health examination.  The minutes also reflect no members of the public spoke. [DE# 6-3, p. 68-69/150; [Exh. A, Declaration of Vera at par. 9, A-4, Minutes of March 10, 2022].

13.    The Commission issued an *Order* appointing Dr. Leonard Weiss M.D. to examine Vera. [DE# 6-3, p. 69/150; Exh. C).  Vera was never given notice of this meeting.  Nor was he able to find, after a diligent search, evidence the Agenda for this Regular Meeting was posted within seventy two hours in a public place, at City Hall or on the City's website.  If it were posted, Vera believes one of his superiors or colleagues would have told him. [Exh. A, Declaration of Vera at par. 9.  On April 24th Dr. Weiss found him unfit. [DE# 6-3, p. 71-72/150; 6-4, p. 128-129/255].  A few days later Chief Chacon notified the Commission of the discrepancy between the Absher and Weiss reports and requested the Commission appoint a three doctor Board to conduct another evaluation as to Vera's fitness for duty.

14.    On Tuesday May 3rd the Commission convened a Special called Meeting. The Agenda reflects that the Commission first met in Executive Session, and noted "Citizen Communication: General" for public comments. As to *New Business* it is again described as possible action to appoint a physician, psychiatrist or psychologist to examine "a police officer" pursuant to

143.081 of the Local Government Code and Rule 15.04 of the Commissions Rules & Regulations. [Exh. A, Declaration of Vera at par. 10. A-5, Agenda; A-6 Minutes]. The *Minutes* reflect no members of the public spoke. The Commission Chair made a motion, which passed, approving appointment of a three-member Board per Chapter 143.022( c) of the Local Government Code for another mental or physical examination. Importantly once again, the *Minutes* are different from the *Agenda*. So is the *Order*. (Exh. D). The Commission instead issued an *Order* appointing three-member *Board* of psychologists to evaluate Vera's fitness for duty regarding an "appeal for (the) hiring process." It noted the Civil Service Director, Mathew Chutz had already obtained the services of Dr. Ronnette Ballard, Dr. Krista Jordan, and Dr. Elizabeth Levy even before the vote. [DE# 6-4, p. 131/255]. It does not address physical or mental fitness. It initially consisted of Dr. Ronnette Ballard, Dr. Krista Jordan, and Dr. Elizabeth Levy, with Dr. Ballard as lead psychologist but on May 11th Levy withdrew from the Board. Once again Vera's name shows up in the publicly available Minutes of the meeting as the object of the need for a mental health examination. [DE# 6-3, p. 74-75/150]. Vera was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda for this Regular Meeting was posted within seventy two hours in a public place, at City Hall or actually on the City's website. If it had been posted Vera believes one of his superiors colleagues would have told him. [Exh.

A,

Declaration of Vera, par. 10].

15.    On June 6th the Commission met. The Agenda reflects the Commission met in Executive Session with "Citizen Communication: General." *New Business* is described as possible action to appoint a physician, psychiatrist or psychologist to examine "a police officer" pursuant to 143.081 of the Local Government Code and Rule 15.04 of the Commissions Rules & Regulations. [Exh. A, Declaration of Vera, par. 11, A-7, Agenda]. The Chair made a motion, which passed, to approve the appointment of a three-member Board per Chapter 143.022( c) of the Local Government Code for another mental or physical examination. Again the *Minutes* are different from the *Agenda* and instead issued an *Order* appointing three-member *Board* of psychologists to evaluate Vera's fitness for duty regarding an "appeal for (the) hiring process." [Exh. A, Declaration of Vera at par. 11, A-8, Agenda].   In any case, the *Order* [DE# 6-4, p. 133/255] is different than the *Agenda* and *Minutes* states in part:

"      The Commission HEREBY ORDERS the board to evaluate Officer Vera to determine whether they are sufficiently fit to serve as a Police Officer and to provide to the Commission 1) a report of the board's findings, 2) a determination of fit or not fit, and 3) all supporting documentation. The Commission will provide the report to Officer Vera and the Department. The Commission HEREBY ORDERS ANDREW VERA to participate in the examination by the board. Participate means, at a minimum, ANDREW VERA shall:

(1) submit to all testing and assessments required by the board; (2) provide their consent, if required by the board, to allow them to obtain the information they deem necessary for the evaluation; (3) provide their consent, if required by the board, to permit Ronnette Ballard, Psy.D. to communicate with the Commission and any other medical professionals involved in the *appeal for hiring process* (emphasis added); and (4) provide their consent, if required by the board, for the release of the report to the Commission, along with all documentation and testing data.  "

16.    As expected, his name shows up in the publicly available Minutes of the meeting as the object of the need for a mental health examination.  Vera was never given notice of this

meeting.  Nor was he able to find, after a diligent search, evidence the Agenda for this Regular Meeting was posted within seventy two hours in a public place, at City Hall or actually on the City's website.  If it was posted Vera believes one of his superiors or colleagues would have told him. [Exh. A, Declaration of Vera, par. 11].

17.    The Board found Vera unfit. [DE# 6-3, p. 77-79]. 135- 137/255].  On August 17th Chief Chacon sent Vera a communication August 17, 2022 whereby he noted the three-member Board, appointed by the Civil Service commission and pursuant to Texas Local Government Code 143.081(d) unanimously found him unfit for duty. That decision was final.  Chief Chacon upheld the decision and terminated Vera from the Police Force. [DE# 6-4 p. 146-147/255]. Vera appealed those decisions in a timely manner.

## IV.  <u>STANDARD OF REVIEW</u>

A.    FOR A MOTION FOR SUMMARY JUDGMENT

18.    A court may terminate litigation by rendering summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); FED. R. CIV. P. 56.  Once the party seeking summary judgment makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S. Ct. 82 (1992). Conclusory assertions are insufficient to raise a genuine issue of material fact. <u>Reese v. Anderson</u>, 926 F.2d 494, 498 (5th Cir. 1991).  A motion for summary judgement is especially appropriate when there are no contested issues of material fact, as we have in this case.  <u>Flath v. Garrison Public School District</u>, 82 F.3d 244, 246 (8th

Cir. 1996).  The granting of partial motion for summary judgement determines that certain matters are deemed established for trial. <u>FDIC v. Massingill</u>, 24 F3d 768, 774 (5th Cir. 1994)

B.      STANDARD OF REVIEW FOR A VIOLATION OF THE OPEN MEETINGS ACT

19.     The provisions of the Texas Open Meetings Act ("TOMA") should be liberally construed to effect its purpose. <u>Toyah I.S.D. v. Pecos-Barstow I.S.D.</u>, 466 S.W.2d 377, 380 (Tex. Civ. App.--San Antonio 1971, no writ).  Moreover, the burden is on the governmental unit to present evidence it fulfilled the duties of TOMA. <u>Tex. Disposal Sys. v. City of Round Rock</u>, 2023 Tex. App. LEXIS 3672* 9 (Tex. App. - Austin, March 31, 2023).

## V. <u>ARGUMENT AND AUTHORITIES</u>

20.     Plaintiff incorporates by reference all the above-related paragraphs, and each one below, incorporates by reference the one above, as well as those below, with the same force and effect as if herein set forth.

A.      ABOUT THE TEXAS OPEN MEETINGS ACT

21.     The Texas Open Meetings Act ("TOMA") is based on the theory that the workings of government in our society should be open to public scrutiny and not hidden or disguised. <u>Cox Enterprises v. Board of Trustees of Austin Independent School District</u>, 706 S.W.2d 956,  958 (Tex. 1986) [purpose of the Act is to open governmental decision making to the public]. Chapter 551 of the Texas Government Code sets forth the standards when meetings are held by governmental bodies in the State.  The plain language of the statute stats that the City, <u>Id.</u> at 551.001 (3)( C), and all its subdivisions and Commissions, <u>Id.</u> at 551.001 (3)(D), must follow the requisites of the Act.

1.      What Is A Meeting

22. The "TOMA defines a 'meeting' as 'a deliberation between a quorum of a governmental body . . . during which public business or public policy over which the governmental body has supervision or control is discussed . . ." Tex. Gov't Code Ann. §551.001." The plain language of TOMA requires the governmental entity to provide notice to the public of an upcoming "meeting. " Carroll v. City of Jefferson, 2023 U.S. Dist. LEXIS 96525 *7 (ED. TX- Marshall Div., June 2, 2023] whether Closed §551.001(1) or Open, §551.001(5) and as to both, any governmental body, §551.001(4)(B)(iv).

2.     Notice Provisions Of TOMA

23. The notice requirements under TOMA are set forth in Sections 551.041, 541.043 [notice must be written and posted in a public spot 72 hours before the meeting] and 551.050 [physically posted at City Hall]. The Act requires governing bodies to provide notice to the public of the date, hour, place, and subject of a meeting. City of Bells v. Greater Texoma Util. Auth., 744 S.W.2d 636, 639, fn. 4. (Tex. App. -- Dallas 1987, no writ).  The Act also requires electronic notice. Tex. Gov't Code §551.056(b); Smith Cnty. v. Thornton, 726 S.W.2d 2, 2 (Tex. 1986) ["In addition to the other place at which notice is required to be posted by this subchapter, the following governmental bodies     must also concurrently post notice of a meeting on the Internet website of the governmental body such as  (1) a municipality because notice of  "employment of personnel" sufficient under the Act     ].

3.     The Acts Of A Governmental Body That Fail To Follow TOMA Are Voidable

24. The Texas Open Meetings Act provides several different enforcement mechanisms and remedies for violations. TOMA. Tex. Gov't Code Ann. §§ 551.141 through 551.146 (2004). City of Elsa v. Gonzalez, 325 S.W.3d 622, 628 (Tex. 2010) (per curiam). An action taken

by a governmental body that violates TOMA is voidable. Tex. Gov't Code Ann. §551.141.

4.    Who Can Bring A Claim Under TOMA

25.    TOMA also allows an 'interested person' to bring an action to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body. Tex. Gov't Code Ann. § 551.142. Tex. State Bd. of Pub. Accountancy v. Bass, 2912 Tex. Ap. LEXIS (Tex. App.- 3rd Dist.- Austin Div., February 24, 2012). Again the failure to follow the requisites of the Act ("TOMA") make any all such *Orders* voidable and permits an interested party to seek relevant remedies.

5.    If An Act Under TOMA Is Voidable So Are Derivative Actions

26.    If a governmental entity fails to follow for instance the notice requirements of TOMA, any derivative actions taken pursuant to such infirm actions are also voidable. *See* Section 551.141, *see also* Garcia v. City of Kingsville, 641 S.W.2d 339, 341 (Tex. App. -- Corpus Christi 1982, no writ); Point Isabel Indep. Sch. Dist. v. Hinojosa, 797 S.W.2d 176, 182 (Tex. App.—Corpus Christi 1990, writ denied) [holding that only those actions taken in connection with defective portions of meeting notice were voidable.]

B.    ABOUT CHAPTER 143 OF THE LOCAL GOVERNMENT CODE

27.    Chapter 143 of the Local Government Code address the rights of police officers. It requires the City to provide for a local "Fire Fighters' and Police Officers' Civil Service Commission" (the "Commission") to administer this chapter in accordance with its purpose. Section 143.009 notes who may initiate an inquiry, or an investigation and make certain findings. Subchapter F at Section 143.081 permits the Commission to issue

*Orders* and appoint a Panel of three (3) mental health professionals to assess whether or not

a police officer is physically or mentally fit to maintain employment. When this Panel (or Board as it is called locally) makes a decision as to mental fitness for duty, the decision is final. Accordingly, an officer who is aggrieved may go directly to district court to seek a remedy. Those remedies under this Statute include but are not limited to reinstatement, attorneys fees, court costs and lost wages. *See* Section 143.015.

C.    ABOUT THE CITY OF AUSTIN AND POLICE DEPARTMENT

28.    The City of Austin is located in Austin, Travis County, Texas. The Austin Police Department is headquartered at 715 E 8th Street, Austin, Texas 78701. Pursuant to State Law and Chapter 143 of the Local Government Code the City has promulgated *Municipal Civil Services Rules.* They have also and also promulgated *Fire Fighters', Police Officers' And Emergency Medical Services Personnel Civil Services Commission* ("The Commission") *Rules And Regulations*. Separately, the Austin Police Department has promulgated their own *General Orders.* [DE# 6-4, 133, 143, 146- 147, 149/255; DE# 6-3, p. 107- 150/150]. It is uncontroverted that Vera is protected by the State Laws noted above including Chapter 143 of the Local Government Code and TOMA. In fact, the City admits when the Commission meets it follows the requisites of TOMA. [DE# 6-4, p. 70, 156- 158/255].

D.    THE CITY DID NOT FOLLOW THE NOTICE REQUIREMENTS OF TOMA

    1.    Vera Can Bring A Cause Of Action Under TOMA

29.    It is uncontroverted that Vera is an 'interested person' as defined by the TOMA. Tex. Gov't Code Ann. § 551.142. Tex. State Bd. of Pub. Accountancy v. Bass, 2912 Tex. Ap. LEXIS (Tex. App.- 3rd Dist.- Austin Div., February 24, 2012).

    2.    Vera' Position As A Police Officer Contemplated Due Process Rights

30.   Like his colleagues Vera has substantive and procedural rights to continued employment that are set by the Texas Local Government Code, Chapter 143. They are also set in the City's Commission Rules and Regulations. [DE# 6-4, 149- 153/255; DE# 6-3, p. 107- 150/150] as well as Police General *Orders*. [DE# 6-4, p. 164- 190/255].   Taken together these laws, rules and orders create a full array of *Due Process* protections for public servants including and especially firefighter and police officers. Arlington Prof'l Fire Fighters v. City of Arlington, 2021 Tex. App. LEXIS 7681 *58 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op)[this includes the right to "equitable relief" like  reinstatement to a protected person's former position]; *see also* Su Inn Ho v. Univ. of Tex. at Arlington, 984 S.W.2d 672, 683-84 (Tex. App.—Amarillo 1998, pet. denied).

31.   Inasmuch as the *Due Course of Law Clause* has been held to provide the same protections as the *Due Process Clause* of the U.S. Constitution, Texas courts, in construing this clause, routinely look to federal case law. University of Tex. Med. Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995) *citing* Mellinger v. City of Houston, 3 S.W. 249, 252-53 (1887). There are two components of the protections afforded by the clause--substantive and procedural. The substantive component of the *Due Course of Law Clause* protects citizens like Vera from state action arbitrarily or capriciously depriving an interest in life, liberty, or property. *See* Eiland v. Wolf, 764 S.W.2d 827, 834 (Tex.App.--Houston [1st Dist.] 1989, writ denied). The procedural component requires citizens to receive *notice* and an opportunity to be heard at a meaningful time in a meaningful manner before any rights in life, liberty, or property may be taken away by the state.  Su Inn Ho at 684.

3.      Violations Of TOMA Are Protected By The Texas Constitution

32.    Due course of law is implicated under the Texas Constitution when a governmental body deprives a person of a protected liberty or property interest. Gill v. Hill, 2024 Tex. LEXIS 297 (Tex. Apr. 26, 2024); *see* Bd. of Regents v. Roth, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). While TOMA by itself is not violation a predicate for a due course-of-law claim, if a Plaintiff identifies a liberty or property interest in employment of which they were deprived, it is applicable. LiveabLe Arlington v. City of Arlington, 2024 Tex. App. LEXIS 3751 * 18 (Tex. App- 2nd District- Fort Worth Div., March 30, 2024).

33.    Thus a person who has protected interest under the *Due Process* protections of the Texas Constitution, has a sufficient claim to support a TOMA violation. As we know, "Actions" taken by a governmental body in violation of TOMA are voidable. Tex. Gov't Code §551.141. Point Isabel Indep. Sch. Dist. v. Hinojosa, 797 S.W. 2d 176 (Tex. App.-Corpus Christi 1990), *writ denied* (Jan. 23, 1991) [voiding decisions to hire principals at meeting while leaving intact decisions to hire librarian, teachers, and part-time counselor.] 551.056(b).  *See* Smith Cnty. v. Thornton, 726 S.W.2d 2, 2 (Tex. 1986) [voiding all actions at a Monday meeting because notice posted on courthouse bulletin board on Friday morning before meeting was not "readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting" as required by the Act as the only access was through Sheriff's office in basement of building]. Carroll v. City of Jefferson, 2023 U.S. Dist. LEXIS 96525 *7 (ED. TX- Marshall Div., June 2, 2023);  Tex. Disposal Sys. v. City of Round Rock *, 9-10 (Tex. App. LEXIS, 3rd Court of Appeal- Austin, March 31, 2023).

4.      The City Failed To Follow The Notice Requisites Of The Open Meetings Act

34.   It is uncontroverted the City must follow the requisites of TOMA whether such meetings are open or closed. Here Vera has provided competent summary judgement evidence that neither Defendant City of Austin nor its Commission fulfilled the notice requirements of TOMA for Commission Meetings held on November 10, 2021, March 10, 2022, May 3, 2022 and June 6, 2022.  Specifically, after a diligent search Vera was not able to find an Agenda for any of these meetings, posted within seventy two hours of the meeting. Nor was he able to confirm any Agenda was physically posted in a public place, or at the site where the meeting was held or at City Hall or actually on the City's website.  [Exh. A, Declaration of Vera, pars. 1-12].

5.      The Agenda Of The June 6th Meeting Did Not Give Fair Notice Of The Action Taken

35.   In addition and in the alterative to the above the *Agenda* off the Commission did not give fair notice to the public of the actions not only to be taken, but were actually taken.  We start of with the truism that provisions of the Open Meetings Act should be liberally construed to effect its purpose. Toyah I.S.D. v. Pecos-Barstow I.S.D., 466 S.W.2d 377, 380 (Tex. Civ. App.--San Antonio 1971, no writ).  Not only do the Agenda notices have to be posted in a timely manner, in a physical location and at city hall, but be specific enough to put the public on notice as to what the meeting considers and what actions will be taken. Here a Court must consider not only the *Agenda* but also the *Minutes* and the resultant *Order* to determine whether or not the *Agenda* put the public on sufficient notice. Odessa Tex. Sheriff's Posse, Inc. v. Ector County, 215 S.W.3d 458, 473 (Tex. App- Eastland, 2006) *citing* Rettberg v. Texas Dep't of Health , 873 S.W.2d 408, 412 (Tex- App.- Austin, March 30, 1994).

36.   It did not.  Let's compare.  The relevant part of the *Agenda* (Exh. A-7) states:

"Discussion and possible action regarding the appointment of a physician,

Plaintiff's Motion For Partial Summary Judgement                                                      17

psychiatrist, or psychologist to examine a police officer and to submit a report to the

commission, department head, and the police officer. Pursuant to Section 143.081 LGC and Rule 15.04 of the City of Austin Fire Fighters', Police Officers' and Emergency Medical Personnel Civil Service Commission Rules and Regulations. (Andrew Vera).

The relevant part of the *Minutes* state:

"Commission Chair Thomas made a motion to approve the appointment of a three-member board per Chapter 143.022(c) LGC for another mental or physical examination. Commission Vice Chair Ahmed seconded the motion, and motion passed on a vote of 2-0."

The relevant parts of the *Order* state:

"The Commission is in receipt of Officer Andrew Vera's personal physician report. Additionally, the Commission's appointed psychiatrist, Dr. Leonard Wiess' medical report has been received by the Commission.

After reviewing both medical reports the Commission determines that the reports disagree and as required by Tex. Local Govt. Code Chap. 143.08 1(d), the Commission appointed three psychologists (Dr. Ronnette Ballard, Dr. Krista Jordan, and Dr. Elizabeth Levy) to conduct a psychological examination of Officer Vera concerning whether Officer Vera is sufficiently fit to continue his duties as an Austin police officer. On May 11, 2022, Dr. Elizabeth Levy withdrew from the appointed board prior to conducting an examination or producing a report.

As a result of the withdrawal of Elizabeth Levy, PhD., the Civil Service Director shall retain the services of Ronnette Ballard, Psy.D., and Krista Jordan, Ph.D., psychologists, to serve on a board to evaluate Officer Vera, and will add Melissa Siebert, PhD. to the board. Ronnette Ballard, Psy.D. shall remain as lead psychologist for this board. Having been presented with this recommendation, the Commission amends the order from May 3, 2022 and APPOINTS:

Melissa Siebert, Ph.D."

Additionally:

"      The Commission HEREBY ORDERS the board to evaluate Officer Vera to determine whether they are sufficiently fit to serve as a Police Officer and to provide to the Commission 1) a report of the board's findings, 2) a determination of fit or not fit, and 3) all supporting documentation. The Commission will provide the report to Officer Vera and the Department. The Commission HEREBY ORDERS ANDREW VERA to participate in the examination by the board. Participate means, at a minimum, ANDREW VERA shall:

(1) submit to all testing and assessments required by the board; (2) provide their consent, if required by the board, to allow them to obtain the information they deem necessary for the evaluation; (3) provide their consent, if required by the board, to permit Ronnette Ballard, Psy.D. to communicate with the Commission and any other medical professionals involved in the *appeal for hiring process* (emphasis added); and (4) provide their consent, if required by the board, for the release of the report to the Commission, along with all documentation and testing data. ”

37.    The Agenda references Section 143.081 of the Local Government Code. This section specifically contemplates the determination of fitness to address a physical or mental health concern. The Agenda does not address this threshold consideration, especially relevant in light of Dr. Weiss's concerns about Vera's physical health, and the public had no way of knowing what action the Commission was about to take.  As we know, the Commission actually considered only one item, the replacement of Dr. Levy with Dr. Siebert, but again, the *Agenda* does not reflect this most important item. The public has no way of knowing that this action was the only reason the Commission was even holding a meeting. Moreover, the Commission action was solely predicated on Section 143.081 of the Local Government Code. If the Commission was going to act pursuant to Section 143.022(c) instead, it should have included that section in the Board Agenda.  As the Agenda did not include this last section, the public has no way of knowing what legal authority the Commission was relying upon.  Last, the Commission ordered the Board to address an *appeal for hiring process* (emphasis added).  If the Commission was going to require the Board of psychologists to consider an appeal for hiring, it should have included that section in the Board Agenda.  In summary, the Commission *Agenda* does not give the public notice of actions ultimately taken and thereby violates the TOMA.

6.    Because The Commission Failed To Follow The Requisites Of TOMA All Related Orders Are Voidable

38.     Because the City did not follow the requisites of the Open Meeting Act, all the acts of the Commission are not just voidable, City of Elsa v. Gonzalez, 325 S.W.3d 622, 628 (Tex. 2010) (per curiam); *see also* Tex. Gov't Code Ann. §551.141, but should be determined to be *Void*, including and especially the *Orders* appointing the Panel of Psychologists to determine whether or not Vera was fit or unfit to serve as a Police Officer.

39.     As we know the record reflects the three (3) doctor Panel fund Vera unfit for duty. [DE# 6-4, p. 137-139/255].  Because the initial *Order* from the *Commission* was void, Point Isabel Indep. Sch. Dist. v. Hinojosa, 797 S.W.2d 176, 182 (Tex. App.—Corpus Christi 1990, writ denied), so were any findings and recommendations by the Panel.  The record also reflects that Chief Chacon terminated Vera's employment with the Police Department. [DE# 6-4, p. 146].  Again, because the initial *Order* from the *Commission* was void, Point Isabel Indep. Sch. Dist. v. Hinojosa, 797 S.W.2d 176, 182 (Tex. App.—Corpus Christi 1990, writ denied), so were the derivative termination order by Chief Chacon.

E.      VERA' MOTION FOR SUMMARY JUDGEMENT SHOULD BE GRANTED

40.     It is uncontroverted that Vera's job as a police officer afforded him an interest in that employment protected by the Texas Constitution.  The record reflects Vera made claims of violations of his rights under the Texas Constitution. [DE# 6-4, 224/255].  It is uncontroverted the City must follow the requisites of the Open Meetings Act.  It is uncontroverted that Vera is an "interested person" under the Open Meetings Act.  It is uncontroverted that Vera can seek remedies under the Open Meetings Act if the City failed to follow the requisites of the Open Meetings Act. Vera has provided competent summary judgment evidence that the City failed to follow the notice requirements of the Open

Meetings Act., in total or part.  Accordingly his *Motion For Summary Judgement* that his rights under the under the Open Meetings Act should be GRANTED.

41.    Further, and based upon all the above, the acts and Orders of the Commission should be voided.  Moreover, and based upon all the above, the recommendation of the Panel should be voided.   Additionally, and based upon all the above, the termination Order of Chief Chacon should likewise be voided. Chapter 143.  Moreover, Vera is entitled to his job back. *See* James v. Hitchcock Independent School Dist., 742 S.W.2d 701, 707 (Tex. App. 1987, writ denied).  Vera is entitled to have his attorneys fees and costs reimbursed.   Vera is entitled to lost wages pursuant to Texas Local Government Code 143.015.

## **CONCLUSION AND PRAYER**

Accordingly, as all such *Orders* by the City and Commission are voidable, Vera asks the Court to void all the decisions and *Orders* made by the Commission and by extension, those of the Decision of the Board which found him unfit to serve  and the decision by the Police Chief Chacon to terminate his employment with the Police Department and City.  Further, that the Court *Order* the City to return Vera to his previous position.  Moreover, that the Court *Order* the City to reimburse Vera for lost wages and benefits. Last, that the Court Order the City to pay all of attorneys' fees incurred and costs of this litigation.

Plaintiff further prays for judgment against the Defendant in the manner and particulars noted above, damages and in an amount sufficient to fully compensate Plaintiff for the elements of injuries enumerated herein, equitable relief as permitted by law, and for such other and further relief as the Court may deem just and proper in law or equity, or as to both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Attorney
Texas Bar No. 00783829
Marty@cirkielaw.com [Email];

Ms. Julianna S. Swann, Attorney
Texas Bar No. 24130061
julianna@cirkielaw.com [Email]

Ms. Melissa Pleasant, Attorney
Admitted *Pro Hac Vice*
melissa@cirkielaw.com [Email];

Cirkiel Law Group, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
REPRESENTATIVES FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

We hereby certify that on this the __ of _____ , 2026 I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system and notice was electronically provided to the following CM/ECF system participants.

Mr. Josh Ordiway, Attorney
Texas Bar No.: 241265538
jordiway@littler.com [Email]; and
Ms. Melissa Ackie, Attorney
Texas Bar No.:
MAckie@Litter.com [Email]
Littler Mendelson P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 982-7250 [Telephone]
(512) 982-7248 [Facsimile]

/s/ Martin J. Cirkiel
Martin J. Cirkiel