**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ANDREW PAUL VERA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. No. 1:24-CV-1158-RP** |
| | § | |
| **CITY OF AUSTIN,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S CORRECTED RESPONSE TO THE CITY OF AUSTIN'S**
**MOTION FOR SUMMARY JUDGEMENT**

NOW COMES Andrew Paul Vera ("Plaintiff" hereinafter) and files this his *Corrected Response To The City Of Austin's Motion For Summary Judgement* (hereinafter "the City) and would respectfully show this tribunal the following:

**I. BRIEF RESPONSE**

1. The City of Austin has a process to determine whether or not an officer is, or is not, mentally fit for duty. The problem is, for example, a police officer who shot a citizen has more pre-termination and post-termination rights than Officer Vera, who merely ruminated over a citizen who was shot by someone else. This problem, in concert with many others, supports Vera's claims pursuant to the Texas Constitution. Moreover, Vera, a person with a mental health condition, does not have the same benefits under Defendant's rules and orders, as compared to his non-disabled peers, a facial violation of Section 504 of the Rehabilitation Act of 1973. The City argues the decision of the of the Psychologists who determined Vera was unfit, has a presumption of validity unless there is a "taint of illegality" and there was not. In due respect to all those involved in the process it is not just a taint of illegality–it is a stain. The motion for summary judgment can be denied, if not in total then at least in part.

## II. <u>EVIDENCE CONSIDERED</u>

2.    Plaintiff relies upon the following, all incorporated herein as if fully set forth; the allegations set out in the City's *Motion For Summary Judgment* and all the exhibits attached thereto [DE# 53- 1 through 53-10].  In addition, the allegations and exhibits in his own *Motion For Summary Judgment* filed in State Court. [DE# 6-3; pgs. 2- /180].  Further, Vera relies upon the allegations and exhibits filed in the City's own (first) *Motion For Summary Judgment* filed in State Court. [DE# 6-4, pgs. 48- 191/255].  Moreover, Plaintiff also relies upon the allegations set out in his own *Motion For Partial Summary Judgment* and all their exhibits attached thereto [DE# 47, Exhibits 47-1 through 47-12]. Last, Plaintiff provides the following exhibits[1] in support of this *Response:*

a.    Exhibit A, City of Austin Municipal Civil Services Rules;

b.    Exh. B, City of Austin, Fire Fighters', Police Officers' and EMS Personnel Civil Service Commission Rules & Regulations;

c.    Exh. C, Austin Police Department General Orders;

d.    Exh, D, TCOLE Model Policy, Medical & Psychological Examination Of A Licesnsee[2]

e.    Exhibit E, International Academy of Police Chiefs, Psychological Fitness For Duty Evaluation Guidelines;

f.    Exhibit F; The APA Professional Practice Guidelines for Occupationally Mandated Psychological Evaluations;

g.    Exhibit G, 2017 American College of Occupational and Environmental Medicine Guidance for the Medical Evaluation of Law Enforcement Officers;

---

[1].  Plaintiff asks the Court to take Judicial Notice of these public documents pursuant to Fed. R. E. 201.

[2].  https://www.tcole.texas.gov/document/mp-mpel.pdf

Corrected Response To City Of Austin Motion For Summary Judgment                                    2

h.      Exh. H, Deposition of Drew Vera;

i.       Exhibit I, Deposition of Dr. Ronnette P. Ballard, PsyD[3];
I.- 1, Dr. Ballard Website;

j.       Exh. J, Declaration of Drew Vera;.

k.      Exhibit K, Various Emails.

### III. <u>STANDARD OF REVIEW</u>

3. The standards of review are well-settled. Evidence of the non-movant, is to be believed and all reasonable inferences inure to his favor, <u>Willis v. Roche Biomedical Labs., Inc.</u>, 61 F3d 313, 315 (5th Cir. 1995); *see also* <u>Matsushita Elec. Indus. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Further, the Court should refrain from resolving factual disputes by weighing conflicting evidence, <u>Toney v. Kawasaki Heavy Indus., Ltd.</u>, 763 F. Supp 1356 (S.D. Miss. 1991), *aff'd* 975 F2d 162 (5th Cir. 1992), assess its probative value or otherwise decide factual issues. <u>Byrd v. Roadway Exp., Inc.</u>, 687 F2d 85, 87 (5th Cir. 1982); <u>Tolan v. Cotton</u>, 2014 WL 1757856; 134 S. Ct. 1861 (2014). In short, summary judgment is not appropriate unless, after viewing the evidence in the light most favorable to the nonmoving party, no reasonable fact-finder or jury could return a verdict for that party. *See, e.g.,* <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000)

### IV. <u>STATEMENT OF FACTS</u>

4. The City of Austin Police Department is headquartered at 715 E 8th Street, Austin, Texas 78701. In 2022 the Police Department employed approximately 2,484 personnel, including

---

[3]. https://www.insightpbhs.com/ronnette-ballard-psyd.html

approximately 1,809 police officers.[4] The City has promulgated *Municipal Civil Services Rules* [Exh. A] and *Fire Fighter's, Police Officer's And Emergency Medical Services Personnel's Civil Services Commission Rules And Regulations*. [Exh. B]. Separately, the Police Department has promulgated *General Orders*. [Exh. C]. The Police Department is one of many departments run by and overseen by the City. The City, Police and all its divisions and commissions must follow the requisites of Chapter 551 of the Texas Government Code, also known as the Texas Open Meeting Act ("TOMA") and other state laws.

5.    Chapter 143 of the Local Government Code addresses the rights of police officers in Texas including a local "Fire Fighters' and Police Officers' Civil Service Commission" (the "Commission") to administer this chapter. 143.051 addresses what causes could initiate a Commission inquiry or investigation. An officer who is subject to a disciplinary action for any number of egregious acts[5] could be temporarily suspended or restored to their previous position (Section 143.051(e), demoted (Section 143.054), placed on uncompensated duty (Section 143.055), be given a leave of absence with full pay (Section 143.073) or be reappointed to a former position after treatment and recovery (Section 143.074).[6]

6.    Section 143.010 sets forth a very specific appeal process when a police officer disagrees with

---

[4]. Meaning there were about 600 civilian employees. *See* en.wikipedia.org ; Austin Police Department in 2022.

[5]. They include but are not necessarily limited to (1 A conviction of a felony or other crime involving moral turpitude; (2) violations of a municipal charter provision; (3)acts of incompetency; (4) neglect of duty; (5) discourtesy to the public or to a fellow employee while the fire fighter or police officer is in the line of duty; (6) acts showing lack of good moral character; (7)drinking intoxicants while on duty or intoxication while off duty; (8) conduct prejudicial to good order; (9) refusal or neglect to pay just debts; (10) absence without leave; 11) shirking duty or cowardice at fires, if applicable; or (12) a violation of an applicable fire or police department rule or special order. If a police officer is disciplined and a specific violation is not noted in the order, the officer must be reinstated. Section 143,052(f). Obviously the City could not go after Vera for cause, as there was none.

[6]. An officer with a physical or mental health disability has no such alternatives under this law.

Corrected Response To City Of Austin Motion For Summary Judgment                4

a Commission Decision. That process requires a full hearing before the Commission and if given an adverse decision, can only an aggrieved officer seek a remedy in state court. Physical or Mental fitness is not one of the considerations listed in Section 143.051. Rather, physical and/or mental fitness is contemplated by Section 143.081 meaning both the inquiry, investigatory, decision-making, hearing and appeal process the other parts of Chapter 143 provide to police officers facing a disciplinary concern for a specific act or acts committed, do not apply where physical or mental fitness for duty is a concern, even where no act or omission has actually occurred. In short, an officer who commits a felony has significant pre-termination and post-termination protections, pursuant to Chapter 143 and Section 143.056. In contrast, an officer who has "delusional thoughts" but nothing more, has no such pre-termination or post-termination rights at all, under the statute.

7.    Where a City has concerns an officer may be mentally unfit, Local Government Code, Section 143.081 permits the Commission to appoint a Panel of three mental health professionals to assess whether or not a police officer is physically or mentally fit to maintain employment. The law does not limit the Panel from only finding fit or unfit. When this Panel (or Board as it might be called locally) makes a decision that an officer is unfit the decision is final. Accordingly, an officer who is aggrieved may go directly to district court to seek a remedy, as long as it's done within ten (10) days of notice of the final decision. Section 143.015. Those remedies include reinstatement, attorneys fees, court costs and lost wages.

8.    Chapter 551 of the Texas Government Code is also called the Open Meetings Act. *The Firefighters', Police Officers And Emergency Medical Services Personnel's Civil Service Commission* more fully discussed below is a governmental entity required to follow the

requisites of this Act.  Among other things before the Commission can take action it must physically post an Agenda in a place readily accessible to the general public and at City Hall, three business days before the meeting. Section 551.043.

9. Of addition import are the Municipal Civil Service Rules. *Civil Service Rule* 6 contemplates Disciplinary Actions with 6.03 listing causes for action and remedies. They include but are not limited to a corrective action plan, examining an officer's past conduct and additional mitigating factors. Before an action is final an aggrieved police officer has a number of procedural rights (Rule 7) at his disposal to contest any finding including a *Hearing* before the relevant City Commission. Issues of physical or  mental fitness are not addressed in these Rules, meaning none of the rights or remedies provided other employees, especially police officers with acts requiring disciplinary measures are afforded to a police officer with concerns about mental fitness, like Officer Vera. [Exh. A]

10. The City of Austin has also promulgated *The Firefighter', Police Officers And Emergency Medical Services Personnel's Civil Service Commission Rules And Regulations* ("the Commission Rules"). Commission Rule 4.04 requires the Commission to follow the requisites of the Texas Open Meetings Act.  Commission Rule 10 contemplates a long list of reasons as to why a police officer could be suspended.  It does not include physical or mental fitness issues.  Commission Rule 14, provides a police officer who has been an object of criminal indictment, even a felony a full array of actions from nothing, to a temporary suspension, to a disciplinary action or dismissal.  For a police officer who is being assessed for physical or mental fitness that, officer does not even have the rights and remedies a felon has.  Rather, issues of physical or mental fitness are contemplated by Rule 15, which incorporates by

reference Chapter 143.81 of the Local Government Code. [Exh. B]

11.     Separately, the Police Department has promulgated what they call *General Orders*. Importantly, these *Orders* start off noting the "Law Enforcement Code Of Ethics. They are taken from the International Association of Chiefs Of Police ("IACP") and 37 Texas Administrative Code Section 1.112 is applicable to all staff.   General Order 958.3 states the "the Department will engage in a good faith interactive process to consider *reasonable accommodations* for any employee with a temporary or permanent disability which can include limited duties or a transfer to another job position. General Order 958.3(c) further notes that if an officer is deemed physically or mentally unfit, General Order 958.3(1)(d); (2)(a) *shall* apply.  Among other things, an officer who has been deemed to have a physical or mental health disability has a right to have a physician provide a written report on if, and if so when, and under what conditions a police officer may return to work or be placed on a limited duty assignment. General Order 958.3.1(d)(3) even more specifically requires the City to offer an officer deemed physically or mentally unfit for duty the right to participate into a *Return To Work Program* ("RTW").   This *Order* also requires the City to offer an officer deemed mentally unfit for duty the right to have their situation reviewed by the City of Austin Americans with Disabilities Act ("ADA") Committee. [Exh. C].  There are other relevant standards of care to consider, all relevant to this cause.

12.     The Texas Commission On Law Enforcement ("TCOLE") is a state agency created by an act of the 59th Legislature by then Senate Bill (SB) 236.  TCOLE became effective on August 30, 1965.  Among many things it adopted rules for the administration of this chapter and for the commission's internal management and control.  Further, it sets forth and establishes

minimum standards relating to competence and reliability, including education, training, physical, mental, and moral standards, for licensing as an officer, county jailer, or public security officer. Pursuant to Local Government Code 143.081 TCOLE sets out the standards for completing a fitness for duty evaluation for a peace officer. TCOLE created what is called the STATE OF TEXAS MODEL POLICY; MEDICAL AND PSYCHOLOGICAL EXAMINATION OF A LICENSEE. [Exh. D]. Among other things it relies upon almost all the directives noted by the International Association of Police Chiefs. ("IAPC").

13.    The International Association of Police Chiefs ("IACP")[7] is the world's largest and most influential association of police officers.  Among many, things they develop standards of practice and ethics for police departments and police chiefs from all over the country. In 2018 they developed a specific Psychological Fitness-for-Duty Evaluation Guidelines that specifically considered professional standards set forth in the American Psychological Association Professional Practice Guidelines for Occupationally Mandated Psychological Evaluations [Exh. F] and the 2017 American College of Occupational and Environmental Medicine Guidance for the Medical Evaluation of Law Enforcement Officers. [Exh. G]. Most relevant to this cause the standards, intended to protect the rights of a police officer, and the process, required professional to be provided with and to use multiple methods and data sources to optimize the accuracy of their findings. This collateral information included but was not be limited to information about job class specifications, previous psychological testing, performance evaluations, previous remediation efforts (if any), commendations, testimonials, internal affairs investigations, formal citizen or public complaints, use-of-force

[7]. www.theiacp.org

incidents, reports related to officer-involved shootings, civil claims, disciplinary actions, incident reports of any triggering events, health care records and other supporting or relevant documentation related to the member's psychological or physical fitness for duty. Speaking with collaterals is an essential part of the process.

14.    Andrew Vera was born in February of 1979 in Oceanside, California. His father was a Marine who served in Vietnam and his mother, also a Marine, worked as an Administrator on the military base. His family moved to the Austin when he was about eleven years. In basic training with the Air Force he had his nose broken which caused some minor breathing problems. He also experienced a shoulder injury while practicing parachute jumping which continues to cause some back pain, affecting his sleep and ability to sit in a chair for long. On another training mission Officer Vera was sky diving with his entire backpack and rifle when a team member had a problem with his chute opening. In order to avoid colliding into a fellow soldier Vera found a landing spot between two trees, but unfortunately the wind moved him into a tree line, a branch hit him in the eye busting all the blood vessels in his eye. He now wears corrective lenses, often tinted prescription sunglasses to address this problem. [Exh. H, 15:8-10; 61:8, 18; 62-63; 63:23-24; Exh. J, par. 1, 2].

15.    Fortunately, none of these matters impeded his ability to serve in the military. In fact, Officer Vera was not only on the team protecting the then President of Afghanistan, Harmid Kazai but was on Combat Control and in charge of training others for this elite team. Overall he served in the military and was stationed in Afghanistan from 2003- 2005 and left the military in 2006. Admittedly, he notes some occasional mild symptoms of Post-Traumatic Stress

Disorder.[8]  He was discharged from the military honorably and with a partial physical injury. He currently resides in Central Texas with his wife and two children.  She works for the City of Austin as a librarian. One son experienced an accident that requires significant and ongoing treatment. He has no history of alcohol or drug abuse, has no active medical problems or is taking any prescription medications.  He has no history for problems with job performance. He no history of inpatient psychiatric hospitalizations, intensive outpatient programs treatment or partial hospitalization.   [Exh. H, 64:15-16; 55:20; Exh. J, par. 3,4]

16.    Andrew Vera was hired by the City of Austin Police Department on or around 2011. Like his colleagues Vera has substantive and procedural rights to continued employment set by the Texas Local Government Code, Chapter 143; the City of Austin Fire Fighter's, Police Officer's and Emergency Medical Service's Personnel's Civil Service Commission Rule and Regulations. [Exh. H, 36:18; Exh. I, par. 5; DE# 6-4, 149- 153/255; DE# 6-3, p. 107-150/150] as well as by Austin Police General Orders. [DE# 6-4, p. 164- 190/255].

17.    Upon entry he took a psychological evaluation and obviously passed.  Officer Vera served as a police officer for approximately eleven (11) years before being terminated in or around August of 2022.  During his time as a police officer, Plaintiff earned multiple awards and accolades for his excellent service to the Austin community.  The record reflects he has never been the object of a complaint by a citizen, a peer or supervisor about Vera's mental fitness or ability to perform core functions as a police officer.  He was chosen by the Police Department to represent it on television in early 2017 on a story related to officer safety.

---

[8].  The PTSD also includes a history being a victim of sexual abuse as a child, and more recently his wife experiencing post-partum depression, his mother-in-law becoming terminally ill and dying from leukemia, his son being injured with subsequent panic attacks and his work as Mental Health Officer.

Corrected Response To City Of Austin Motion For Summary Judgment                    10

Even so, during this period he began to have some job related stress (and Post Traumatic Stress Disorder from his time in the military), especially when serving as a Mental Health Officer. Fortunately, he had the insight to see this particular problem was effecting his own mental health and he had the insight to ask he removed from that team. He continued to serve the City and Police Department well, even testifying in criminal trials on behalf of the City on various occasions. [Exh. H, 123:4-10; 125; 206; Exh. J, par. 6-9].

G.     PLAINTIFF FILES A COMPLAINT

18.    On or about August 7, 2021, Vera filed a complaint with Internal Affairs. [DE# 6-3, p. 27-31/150]. On the 18th Police Chief Joseph Chacon sent Vera a memo ordering him to submit a report to the Commission from his personal treatment provider, Dr. Darla Absher, PsyD, LPC. The report was to address whether or not he was fit to continue his duties. A questionnaire was sent to Absher to be filled out. [DE# 6-3, p. 33- 34/150]. Vera completed a psychological evaluation and questionnaire. On the September 17th she indicated he was fit for duty without any limitations..[9] [DE# 6-3, p. 36- 43/150]. On October 15th Chief Chacon questioned Dr. Absher's report and requested the appointment of another professional to conduct an evaluation. [DE# 6-3, p. 44/150].

19.    The City what is called the Civil Service Office ("CSO") in their Human Resources ("HR")

---

[9]. This questionnaire is made up of about 80 plus questions divided by area of function. 17 addre0ss physical functions and 10 are specific to "Behavioral and Psychological Functions.' The rest are split among Essential knowledge, Patrol Shift/ Arrest & Apprehension, Communication, Investigative, Court, Paperwork, Administrative Functions and Special Operations. It permits the Psychologist administering the exam to opine if the person being assessed would benefit from an accommodation to be able to work as a police officer, as well as if there are items the officer is fit for and others they are not fit for. Importantly if the doctor determines the officer is physically or mentally unfit, they can give an opinion as to whether or not the officer would be able to work if there was some form of limitation on the job offered, or if given a modified duty assignment, or if there was a restriction or if the officer was provided another accommodation. In regard to any of these items, the doctor could opine on when he or she thought the officer could return to "full unrestricted duty.'

Department. The CSO is the liaison with the Commission. The Commission regulates the promotion, suspension, and termination of Austin firefighters, police officers and EMS personnel and issues *Orders* in accordance with the Texas Local Government Code and other rules and regulations. The CSO acts on behalf of the Commission by functioning as the Commission's administrative and ministerial support. During the relevant period of this case, Matthew Chutz was the liaison between the CSO and Commission. [DE# 6-4, p. 75- 76/255]. The City has a Board & Commission Information Center ("BCIC") that posts upcoming City of Austin and Commission Meetings on a website. [DE# 6-4, p. 156/255].

20.     The Agenda reflects the Commission had a *Regularly* scheduled meeting on Monday, November 1st at 10:00am where they regularly held business- the Learning & Research Center at 5202 E. Ben White, Bldg. 500, Room 249, Austin, Teas 78741 ("Learning Center"). He was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda for this Meeting was posted within seventy two hours in a public place, where the meeting was held or at City Hall.  If it was posted Vera believes one of his superiors or colleagues would have told him. [DE# 47-1, par. 5-6; Exh. 47-2].

21.     The *Minutes* of the November 1st Commission Meeting reflect that Matthew Chutz, (then) Acting Civil Service Director attended the meeting. No members of the public spoke. The Commission voted to "approve the appointment of a three-member board per Chapter 143.022( c) of the Local Government Code ("LGC") for another mental or physical evaluation." [DE# 47-1, par. 7; 47-3]. The Commission issued an *Order* that same day but it is different from the *Minutes*. First they write that Chief Chacon requested a physician be appointed. Instead of a three-member board they "voted to appoint Dr. Steven Thorne to

evaluate Vera as whether he was fit or not fit for duty." It did not address whether or not the report was based upon physical or mental health concerns. Of note was that the *Order* stated the CSO Director had retained Dr. Thorne [DE# 6-4, p. 101/255, DE# 47-10] before the meeting and order.

22. In or around December 2021, Dr. Stephen A. Thorne, Ph.D., Licensed Psychologist, completed his evaluation of Officer Vera. He notes that Matthew Chutz was the person who had communicated with him before the Commission met to retain his services. Dr. Thorne determined that Plaintiff was presently fit for all duties as a police officer. Dr. Thorne acknowledged that in or around 2017, Plaintiff may have experienced a mental health crisis, but there was nothing evidencing a compromised mental health state or inability to work as a police officer at that time. In his well-reasoned inquiry and three page report of December 24th Dr. Thorne spoke with Sergeant Joshua Dozier and Corporal Javier Bustos, both who worked closely with Vera, as well as his previous Therapist Tania Glenn, LCSW and current one Dr. Absher. He administered the Minnesota Multiphasic Personality Inventory-3 (MMPI-3) a commonly used and empirically supported psychological test and the Adult Self-Assessment Inventory. The following portion of his report is noteworthy:

"Mr. Vera was dressed appropriately .... displayed no obvious deficits in hygiene. [was] oriented to person, place, day, date and year... [had] appropriate eye contact [and] his mood was appropriate... There was no evidence of psychomotor retardation or ... evidence of bizarre or peculiar thoughts patterns or perceptual distortions. ...

While Dr. Thorne noted his lack of familiarity with Vera's complaint and its objective veracity, he gave great weight to the discussions he had with Sergeant Dozier and Corporal Bustos. Specifically each reported that:

"over the course of their work-related relationship with him (... and has seen Mr.

Vera numerous occasions over the period of several months) did not express *any* (emphasis added) concerns relating to Mr. Vera's current psychological functioning and/or his (then) present 'fitness for duty' as a police officer with the Austin Police Department.   In short, it is this examiner's opinion that Mr. Vera is presently fit to perform his duties as a Austin Police Officer.

[DE# 6-4, p. 103- 105/255].  Chief Chacon did not question this report and Vera continued to work as police officer with the APD without incident.

23.    On or about February 7, 2022 Vera was interviewed by the Internal Affairs Department. IA reported their concerns up and onto Chief Chacon about Vera's fitness for duty. On February 11th the Chief requested Vera again submit a report from Dr. Absher, pursuant to section 143.081(b) of the Civil Service Act. [DE# 6-3, p. 53-55/150; 6-4, p. 107- 107/255].  Vera saw Dr. Absher that day who determined he was fit for duty. [DE# 6-3, p. 57- 63/150; 6-4, p. 111- 117/255]. On or about February 13th Chief Chacon assigned Officer Vera to a desk job, handling non-emergency 311 calls. [Exh. J, par]. A few days later Chief notified the Commission he questioned Dr. Absher's second report and requested another professional be appointed to evaluate Vera's alleged unfitness for duty. [DE# 6-4, p.119/255].

24.    As noted above, the City has a Board & Commission Information Center ("BCIC") that posts upcoming City and Commission Meetings on a website. In light of the Special Called Meeting to be held at 10:00 a.m. on March 10th, Vera was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda for this Regular Meeting was posted within seventy two hours in a public place or at City Hall.  If it was posted Vera believes one of his superiors or colleagues would have told him. [DE# 47-1, par. 8, 9]. ].

25.    On Thursday, March 10th at 10:00am the Commission convened a Special Called Meeting to consider the request to appoint another doctor to evaluate Vera. The Agenda in regard to

public comments notes "Citizen Communication: General." As to *New Business* it notes discussion and possible action to appoint a physician, psychiatrist or psychologist to examine "a police officer." His name also shows up in the publically available Minutes of the meeting as the object of the need for a mental health examination. [DE# 6-3, p. 68-69/150; DE# 47-1, par. 9; DE# 47-5].

26.    The Commission issued an *Order* appointing Dr. Leonard Weiss M.D. to examine Vera [DE# 6-3, p. 69/150; Exh. C].. Vera was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda for this Regular Meeting was posted within seventy two hours in a public place or at City Hall. If it was posted Vera believes one of his superiors or colleagues would have told him. [Exh. A, Declaration of Vera at par. 9]'

27.    On April 24th Dr. Leonard Weiss M.D. completed his examination of Vera. He completed a brief social history review but he did not speak with Dr. Absher, Dr. Thorne or any of the fellow officers who worked with Vera.  He did note there were no complaints against Vera or any actual job-related concerns.  He did not perform any independent medical, psychiatric or psychological testing.  He received a (blank) copy of the *Essential Functions Form* from the Commission but did not fill it out. He recognized that many of the concerns that Officer Vera had addressed in his IA Complaint and Interview could have some veracity, he nevertheless opined that Officer Vera could not perform certain functions and found him unfit for duty. It is noteworthy Dr. Weiss noted the limitations of the evaluation and stated that "diagnostically it would be beneficial for Officer Vera to have a (complete) medical [examination] by a board-certified internal medicine physician, and a neurological work-up by a board-certified neurologist including necessary blood or radiological tests." Further, that

Officer Vera could return to treatment with ongoing therapy but found him unfit, implying a temporary placement was appropriate.[DE# 6-3, p. 71- 72/150; 6-4, p. 128-129/255].

28.    On Tuesday May 3rd the Commission convened a Special called Meeting. The Agenda reflects that the Commission first met in Executive Session. Again that "Citizen Communication: General." As to *New Business* it is again described as possible action to appoint a physician, psychiatrist or psychologist to examine "a police officer" pursuant to 143.081 of the Local Government Code, Rule 15.04 of the Commissions Rules & Regulations, IAPC and TCOLE Standards.  [DE# 47-10, par. 10. A-5, DE# 47-6]. The *Minutes* reflect no members of the public spoke. The Commission Chair made a motion, which passed, approving appointment of a three-member Board per Chapter 143.022( c) of the Local Government Code for another mental or physical examination. Importantly once again, the *Minutes* are different from the *Agenda* . So is the *Order*. (Exh. D). The Commission instead issued an *Order* appointing three-member *Board* of psychologists to evaluate Vera's fitness for duty regarding an "appeal for (the) hiring process." It noted the Civil Service Director, Mathew Chutz had already obtained the services of Dr. Ronnette Ballard, Dr. Krista Jordan, and Dr. Elizabeth Levy even before the vote. [DE# 6-4, p. 131/255]. It does not address physical or mental fitness. It initially consisted of Dr. Ronnette Ballard, Dr. Krista Jordan, and Dr. Elizabeth Levy, with Dr. Ballard as lead psychologist but on May 1th Levy withdrew from the Board. Once again his name shows up in the publically available Minutes of the meeting as the object of the need for a mental health examination. [DE# 6-3, p. 74-75/150]. Vera was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda for this Regular Meeting was posted within seventy two hours in a public place or at City Hall. If it was

posted Vera believes one of his colleagues would have told him. [DE# 47-1, par. 10].

4. The June 6, 2022 Commission Meeting

29. On June 6th the Commission met. The Agenda reflects the Commission met in Executive Session with "Citizen Communication: General." *New Business* is described as possible action to appoint a physician, psychiatrist or psychologist to examine "a police officer" pursuant to 143.081 of the Local Government Code and Rule 15.04 of the Commissions Rules & Regulations. [Exh. A, Declaration of Vera, par. 11, A-7, Agenda]. The Chair made a motion, which passed, to approve the appointment of a three-member Board per Chapter 143.022( c) of the Local Government Code for another mental or physical examination. Again the *Minutes* are different from the *Agenda* and instead issued an *Order* [DE# 47-9] appointing three-member *Board* of psychologists to evaluate Vera's fitness for duty regarding an "appeal for (the) hiring process." [DE# 47-1, par. 11]. In any case, the *Order* [DE# 6-4, p. 133/255] is different than the *Agenda* and *Minutes* states in part:.

"...... The Commission HEREBY ORDERS the board to evaluate Officer Vera to determine whether they are sufficiently fit to serve as a Police Officer and to provide to the Commission 1) a report of the board's findings, 2) a determination of fit or not fit, and 3) all supporting documentation. The Commission will provide the report to Officer Vera and the Department. The Commission HEREBY ORDERS ANDREW VERA to participate in the examination by the board. Participate means, at a minimum, ANDREW VERA shall:

(1) submit to all testing and assessments required by the board; (2) provide their consent, if required by the board, to allow them to obtain the information they deem necessary for the evaluation; (3) provide their consent, if required by the board, to permit Ronnette Ballard, Psy.D. to communicate with the Commission and any other medical professionals involved in the *appeal for hiring process* (emphasis added); and (4) provide their consent, if required by the board, for the release of the report to the Commission, along with all documentation and testing data...."

30. Once again, his name shows up in the publically available Minutes of the meeting as the object

of the need for a mental health examination. Vera was never given notice of this meeting. Nor was he able to find, after a diligent search, evidence the Agenda for this Regular Meeting was posted within seventy two hours in a public place, at City Hall or actually on the City's website. If it was posted Vera believes one of his superiors or colleagues would have told him. [DE# 47-1, par. 11].

31.    The record in this litigation evidences the Commission failed to provide the Panel Members any of the collateral information set forth in the TCOLE Guidelines. If they had, they would have learned more about Officer Vera's specific job class specifications, his previous psychological testing, his performance evaluations and various commendations and testimonials about him. They would have learned there were no internal affairs investigations, formal citizen or public complaints, use-of-force incidents, reports related to officer-involved shootings, civil claims, disciplinary actions, incident reports of any triggering events, about him.  They would have learned there were no previous remediation efforts ordered as none were necessary.  They would have learned of his history in the military, his injuries, his health care records and other supporting or relevant documentation related to the member's psychological or physical fitness for duty.  They would have learned about the City's reliance upon Officer Vera's testimony in Court on case specific evidentiary issues during the period now in question. They would have learned of Officer Vera being chosen to represent the Department on television and in the media on safety issues, now allegedly the object of their concerns. [Exh. J]

32.    The City of Austin also forbid open communications between all Panel Members and any with other professionals who worked with Officer Vera.  For instance, early on the Panel members

had some questions as to whether or not some of the concerns that Vera had described to IA Investigators had actually occurred. In a related vein, there were communications between the Panel Members and Commission Staff stating their desire to speak with Dr. Absher in light of her long-time treatment of Officer Vera. Dr. Ballard sent these concerns on but the City Attorney who forbid any personal communications between other Panel Members and Dr. Abshire. After litigation ensued Matthew Chutz, the Manager with the Municipal & Civil Service Office stated that:

"The June 6, 2022, order designated Dr. Ronnette Ballard as the lead psychologist and permitted only Dr. Ballard to communicate with the Commission or any medical professionals not serving on the board. It is standard CSO procedure to draft Commission orders designating only one doctor to communicate this way. This is done, and was done with Vera, to ensure that confidential medical information is not exposed to more people than necessary, thereby risking it becoming subject to a public request for inspection under Texas's Public Information Act."

Later, one of the City of Austin Staff Members with the Municipal & Civil Service Commission, called Dr. Absher directly and told her she too was forbidden from contacting any of the Panel Members on her own volition. Instead of permitting a free and open professional interaction between the various psychologists, Matthew Chustz, the Municipal & Civil Service Manager of the Commission, sought out a number of select written questions to ask Dr. Absher. Three questions were provided by Dr. Siebert. A fourth was superfluous, and apparently added by City Staff intended to impair Officer Vera's relationship with Dr. Abshire. In any case, supposedly there are written answers to those questions but they are not available. [Exh. K 1, pgs. 1-18].

33. All three board members interviewed Vera himself in person, during the evaluation process. None found him suicidal, homicidal or dangerous to himself or others. They reviewed the few

previous reports provided but did not speak with Officer Vera 's Supervisors, whether it be Sergeant Dozier or Corporal Bustos or any of his fellow officers. None. The record reflects that not any of the psychologists actually completed a Fitness For Duty Examination Report. Each psychologist from the Panel had Officer Vera completed their own psychological testing, but no one has provided the results to the Commission or Officer Vera. Not surprisingly the Panel found Officer Vera unfit. [DE# 6-3, p. 77-79] 6-4, 135- 137/255].

34. Dr. Ballard's deposition testimony helps Vera more than the City. Even though she is a member of the American Psychological Association she was not even familiar with the American Board of Forensic Psychology nor classes on the topic of mental fitness for officers with the Texas Commission on Law Enforcement Standards [Exh I, 13, 21-22: 15:1-3; 18:11-15] and doesn't know what a neurological exam is [Exh. I, 27, 12-15]. The Panel did not complete a Psycho-social History to learn about Vera's Background, family, military or mental health history, psychiatric hospitalizations, substance abuse, nor was there anything in their final report that one was completed. [Exh. I, 39:16-25; 40:1-4; 41: 1-13; 50: 10-25; 51: 1-23]. Nothing about his past performance as an officer, or conduct, or complaints, no officer involved shootings, disciplinary actions, incident reports, etc, [Exh. I, 46, 17:21, 47:1-25; 48: 1-12]. She never looked at his previous psychological test with the police to consider a baseline. [Exh. I, 49: 9-10]. She never spoke with any of the people who worked with him. [Exh. I, 55: 9-25]. There were no other documents provided by the City save what was written on the final report. No one completed a checklist to review job requirements. [Exh. I, 44, 23:25; 45, 1:8; 64: 16-21]. When asked about whether it was important to have this information she did not think so, in that she already had learned that Vera "highly

pathological" and there was no need to do more. [Exh. 56: 2-17; 57:3-18]. When asked if there was an objectively verifiable evidence Vera could not do the skills noted on the checklist, she was evasive. [Exh. I, 64- 67]. There was no information provided that Vera could not function at the desk job. [Exh. 69:4-24]. Ballard's testimony was particularly evasive when asked if the recommendations given by Dr. Weiss, MD that Vera should be referred to a neurologist, for a blood work up and radiologist should have been considered by the Panel, she simply stated she wasn't a doctor and finally "I don't know." [Exh. I, 59:3-24; 60: 1-25; 61: 1-25; 62: 1-25]. She did confirm the sequence of events that led to the City Attorney denying the Panel members the ability to talk to Vera's therapist, D. Abshire, after Dr. Jordan thought it would be helpful to speak with her directly, in light of her long time treatments of Vera and finding him fit. In fact she was a "hold out" but apparently relented after being "shot down" by the City Staff. [Exh. I, 80- 95; Exh, K]

35.    On or about July 26, 2022, the Civil Service Commission issued a written board opinion, determining that Plaintiff was not fit to serve. He was given notice of the decision on the 29th. Chief Chacon sent Vera a communication on August 17, 2022 whereby he noted the Board, appointed by the Commission and pursuant to Local Government Code 143.081(d) unanimously found him unfit for duty and the decision was final. Chief Chacon upheld the decision and terminated him from the force. [DE# 6-4 p. 146- 147/255]. Vera appealed those decisions in a timely manner. If he had been offered a desk job with the police department or elsewhere with the City, he would have taken it. [Exh. J, par. 9] He was not offered a temporary suspension, limited duties, transfer, referral for mental health treatment, referral to a neurologist, referral for a blood work up or radiological tests, or other accommodations

or any other reasonable alternative to termination offered to all his non-disabled peers.

## V.  ARGUMENT & AUTHORITIES-THE CONSTITUTIONAL CLAIMS ARE VIABLE

36.    Plaintiff incorporates by reference, as if fully set forth herein all the above-noted paragraphs. Further, each succeeding paragraph and section incorporates by reference, as if fully set forth herein, the one above it.

37.    The City write little here. First, that Vera has no private cause of action for damages for violations of Articles 1, Sections 13 and 19 of the Texas Constitution. They argues his claim are frivolous..[DE# 53, pgs, 38-40/42].

38.    Vera notes the City is correct in arguing that Vera has no private right of action for damages under the Texas Constitution.  But they failed to review Vera's last live pleading where he claimed rights pursuant to "Due Process of Law as contemplated by Article 1, Section 13 and Due Course Of Law by Article 1, Section 19, both of the Texas Constitution and both violated by the acts and omissions of the City, of which he may seek a full array of relief and remedies." [DE 6-4, pg. 224/255].  As the Defendant failed to address the substance of this claim they have  waived the right to do.  L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994). Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX Sherman Division, March 21, 2019) *citing* Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008).  But even if they hadn't, Vera would  prevail on this point.

39.    Procedural Due Process is embedded in Article 1, Section 19 of the Texas Constitution which requires reasonable notice to be heard, Francisco v. Board of Dental Examiners, Tex. App. LEXIS 185 (Court Of Appelas, 1941), a proper hearing before an impartial trier of fact, Nash v. City of Lubbock, 888 S.W.2d 557 (Texas Court of Appeals, 1994) with a provision made

for a trial de novo.  Francisco.  In summary any administrative agency must provide a full and fair hearing on all disputed fact issues critical to the rights of the parties. Texas Employment Commission v. Johnnie Dood Automotive Enterprises, Inc., 551 S.W. 2d 171 (Civ. App. 1977); Pierce v. Texas Racing Commission, 212 SW 3d 745 (Texas Appeals, 2006).  Where a police officer was not even given an informal chance to "tell his side of the story" before termination, the failure to have a post-deprivation violated due process. Soto v. City of Laredo, 764 F. Supp. 448 (S.D. TX, 1991).

40.     Vera argues that the City of Austin's own pleadings and arguments supports his position that his due process rights were violated by the acts and omissions of the City of Austin, and by extension the Police Force and Commission.  While each will be much more specifically argued below, some are easily listed because the violations of due process are self-evident. For instance, that he had to first appeal the Board Decision to the Commission, but neither Chapter 143 of the Local Government Code nor any of the City's rules, regulations, general orders, etc. provide for a right to appeal the Board decision to the Commission or to Court [DE# 53, pgs, 12-13/42] an obvious due process violation. They City also argues Vera' claim fails as a matter of law because there is no "taint of illegality[10]" in Board's procedures" [DE# 53, pgs, 14- 21/42] but as Vera wrote in his live pleading and now with evidence in support, that the process was *tainted* (emphasis added) by a number of other matters including but not limited to the City and Commission not having any professional practice guidelines[11] for the

---

[10]. City of Houston v. Dunbar, 2003 Tex. App. LEXIS 3463 *10-11, 17, 18 (Tex. App.- Houston [14th Dist.], may 23, 2023) pet for review denied.

[11]. Small v. Memphis-Shelby County Airport Authority, 2015 U.S. Dist. LEXIS 82523 *8-9 (W.D. TN- Western Division, June 25, 2015)[relying upon IACP Standards for mental fitness assessment].

psychologists to follow or training and in a related vein, a of objective standards of review.[12] Additionally, if there is evidence of a predetermination of outcome,[13] this too is evidence of illegality (i.e, failure of due process). Last, Chapter 143 not only fails on its face to give Vera an appeal process, but it gives an officer who committed even significant criminal various rights that a person with a mental health disability like Vera, does not have.[14]

41.    Whether it be by waiver, or because Vera's complaint and summary judgement evidence is competent to do so, or both, the City of Austin's *Motion For Summary Judgement* on Vera's claim his rights under the Texas Constitution, can be denied.

## VI.    ARGUMENT & AUTHORITIES-THIS COURT HAS JURISDICTION

42.    The City argues the Court does have jurisdiction to hear Vera' complaint for a number of reasons. First, Chapter 143 of the Local Government Code set up a number of rights, responsibilities and procedures to appeal an adverse decision by the Commission. Here Vera appealed the decision by the Board of Psychologists directly to state court, and had to first appeal to the Commission and did not. [DE# 53, pgs, 11-12/42]. In a related vein but somewhat inconsistent vein, they next argued an appeal from a Board Decision, is not appealable to the Commission (anyway). [DE# 53, pgs, 12-13/42]. Next, and in the alternative, even if the Court does have jurisdiction over Vera' action, his claim "fails a a matter of law." Specifically, the Board's Decision has a "presumption of validity" that can

---

[12]. This matter will be argued below in more depth.

[13]. City of Houston v. Cortez, 2022 Tex. App. LEXIS 912 *8 (Tex. App.- Houston [14th Dist., Feb. 8, 2022)[arbitrary, capricious acts or clear abuse of authority creates taint of illegality].

[14]. Of course this also discrimination based upon disability as person without disabilities are given more due process rights than those persons with mental health disabilities.

Corrected Response To City Of Austin Motion For Summary Judgment                                24

only be overcome if there is evidence the Board's Decision has a taint of illegality." [DE# 53, pgs, 14- 21/42].  Moreover, the Board Decision was supported by substantial evidence. [DE# 53, pgs, 21- 22/42].

43.    In order to avoid unnecessary redundancy, Plaintiff incorporates by reference, as if fully set forth herein, the above noted section. Nevertheless, Vera again points the Court's direction to the City's argument he has no right to appeal a Board Decision under Chapter 143, only a decision by the Commission, and again there never was a Commission Decision rendered ( only one ultimately by the Board and then Chief Chacon).  If they are correct, then Vera re-urges his argument that this failure in the statute to provide him, among other things, a right to appeal, is infirm according to the Texas Constitution.  Alternatively, if we read Section 143.015 regarding appeal rights to include the Board Decision to find Vera unfit, was pursuant to the Commission's *Order* giving them the authority to make this decision (which is true) that Vera has a right to appeal, and did so in a timely manner.  Of course, if the Court is not convinced, this bring us back to the constitutional argument, where we can now say Chapter 143 is also void for vagueness.[15]

44.    Again, they argue the decision by the Board was supported by substantial evidence and their decision, as well as those by the Commission in support thereof, can only be rejected if there was a "taint of illegality."  In addition to those items briefly noted in the section above, Vera adds the following.  In a substantial evidence review, the trial court may only set aside the agency decision if it was made without regard to the law or the facts. Reasonableness is the

---

[15].  It would seem illogical the Legislature would not have provided any appeal rights in the statute for Vera and similarly situated others.  Even if not be inferred Vera still has a right to appeal any adverse decision, as does any other person protected by Chapter 143 and the Texas Constitution.

touchstone; the court examines the record to determine if reasonable minds could have reached the same conclusion as did the agency. In combination with the substantial evidence review, the trial court may also examine the decision of the agency for fraud, bad faith, and abuse of discretion, as well as, to ascertain that agency proceedings afforded due process of law. Central Educ. Agency v. Upshur County Comm'rs. Court, 731 S.W.2d 559, 562 (Tex. 1987). Here City of Houston v. Cortez, 640 SW3d 905, 909-910 (Tex. App.- Houston [14th Dist.], 2022, no pet.) is also helpful. There the Appellant argued a number of items that could support a "taint of illegality" argument. They included for instance, a statutory violation, perjury, a violation of internal policies, evidence of a predetermination of the outcome, a violation of due process or collectively "arbitrary acts." Vera argues here the acts of the Board and Commission are both tainted by illegality. If fact, after a review of all the facts in this cause, there is strong support in Vera's position, there is a sufficient "taint of illegality" to defeat the *Motion For Summary Judgement.*

45.    They include but are not limited to the City's failure to treat police officer's with a mental health concern the same as those offices who have disciplinary concerns. As noted above, this violates both the Texas Constitution and the Rehab Act, and are clearly illegal. The City failed to provide the Board any objective standards of review to use in providing a fit or unfit review. The City failed to provide any training to the Board. The City retained the Board before the Commission issued an Order appointing the Board. The City failed to provide the Board relevant material in Vera's personnel file. The City refused to permit Board members to communicate directly with Vera's therapist, Dr. Abshire. In light of Dr. Weiss's report, the Commission failed to consider that Vera's mental health concerns were at least in part,

caused by physical health and medical matters. And there's more.

46.     Let us briefly (re) review the deposition testimony of Dr. Ballard, the lead psychologist of the Panel. [Exh. I].   Neither she nor her colleagues were ever trained on how to complete a fitness review  or how to work on Panel together. [pgs. 18:11-15; 32:7-9].   They were never provided, any objective standards of review and she was not even aware of them, especially those by the International Chief's of Police, the American Psychological Association, American College of Occupational Medicine or TECOLE.  [pg. 14:21-25; 15-16; 32:10; 55:9-25; 75:10- 15].  They did not on their own seek any documents of Vera' ongoing stellar work history with the Department or speak with any of his direct line superiors or peers. Or ask for, let alone review his previous psychological testing. Or ask if he ever put anyone at risk. [pgs. 49:9-19; 110:10-16]. The list goes on, but one item that is telling was her evasiveness when asked if the Panel (Board) should have considered the comments from Dr. Weiss that Vera should be referred for medical tests she became evasive and obviously defensive, an inference she knew the Panel should have. [pgs. 72:3-25; 73: 1-23].  Even more troubling was the following. She commented hat being referred for the mental fitness exam, in concert with the information provided by the City, evidenced problems with job performance and there was no need to look further. [pgs. 56: 1-17; 69: 88-21].  This is the a classic definition of predetermination, was arbitrary and illegal.

47.     As noted above, the City's various rules and practices provide more due process protection both pre-termination and post-termination to an officer who shot a citizen as compared to Vera who was concerned a citizen was shot- here that absurdity speaks for itself.  Moreover, there is substantial competent summary judgement evidence that all the above-noted problems

in concert with the acts and omissions of the Commission and Board, results in not just a taint of illegality but more like a stain. If the Court is still is still not convinced Vera respectfully asks the Court to look revisit the evidence whereby the City Attorney and Staff controlled and interfered with the entire fitness process from beginning to the end. of illegality. The City's *Motion For Summary Judgement* can be denied.

## VII.  ARGUMENT & AUTHORITIES- THE SECTION 504 CLAIM IS VIABLE

48.    The City notes the Texas Human Resources Code and Section 504 of the Rehabilitation Act of 1973, can be construed together. Vera' claim fails because he does not have a disability and if he did, it did not impact a major life activity, including performance as an officer. Nor did he ever let the City know what limitations he had. [DE# 53, pgs, 29-30/42].   Next, Vera would not have been qualified, if given a reasonable accommodation, to continue as a police officer due to his mental illness.[DE# 53, pgs, 30- 31/42]. Nor did he request any accommodation to have a viable failure to accommodate claim. [DE# 53, pgs, 31- 33/42].

49.    Plaintiff responds as follows. Again the Defendant City argues that Vera fails to establish a prima facie case for a failure-to-accommodate claim, primarily because they contend that Vera did not have a disability. This argument fails. By the City's own admission, following Vera's submission of his Internal Affairs complaint in August 2021, there were obvious concerns about Vera's mental state and ability to conduct the duties of a policeman. This included concerns about paranoia and delusions. The concerns held by Austin Police Department staff were so severe that the department confiscated Vera's service weapon and placed him on administrative leave. [DE #53, p. 3]. Further, that Vera's suspected condition warranted an immediate fitness-for-duty evaluation. *Id.* Moreover, four licensed psychologists each found

Vera "mentally unfit." At the least there is a contested issue of material fact as to this issue which is best left for jury, as is true as to each argument set forth by the City.

50.  The Defendant also argues Vera is not "otherwise qualified." The competent summary judgement suggests otherwise. Here the City employs approximately 13,800 individuals. Of those 13,800 individuals, approximately 2,457 personnel are employed by the Austin Police Department. Of those 2,457 individuals, approximately 1,819 are police officers. In February 2022, Vera was assigned to a desk job taking 3-1-1 phone calls. Vera continued in this position with no concerns about his ability, or lack thereof, to complete those duties and responsibilities. However, when Vera was deemed "unfit" to serve in August 2022, he was removed from this position too, despite there being absolutely no concerns with his performance. Even if Vera was unable to meet the requirements for an officer position, Vera demonstrated that he was willing and able to complete the requirements of a desk and/or non-officer civilian position. However, Vera was not reassigned to another desk job, nor permitted to work in another non-officer civilian position despite the City of Austin primarily employing non-officer civilians and Vera demonstrating the ability to be successful in such a position. Here again, there is a contested issue of material fact best left for jury.

51.  Next, the Defendant City contends that Vera's claim fails because he did not explicitly request accommodations, in connection with the contention that Vera's disability was not known to the City. In any case, the facts show and as discussed herein, Plaintiff can demonstrate his disability was so "open and obvious." On this point, the City cites EEOC v. Chevron Phillips Chem. Co. to support the contention that Vera was required to explicitly request an accommodation, and that only an employee request triggers the interactive process. This is

not exactly all the Court said. Specifically, the initial burden rests on the employee only "where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer," Id. at 570 F.3d at 621 (*citing* Taylor v. Principal Fin. Group, 93 F.3d 155, 165 (5th Cir. 1996). Again, Vera's disability was so obvious that he was placed on administrative leave, ordered to undergo an immediate fitness-for-duty evaluation, moved to a desk job and had his firearm confiscated.

52.     Courts have held that when accommodations are already being provided, as was the case here with Vera being placed in a desk job position, explicit requests for accommodations may not be required. *See* Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 (5th Cir. 1999) [no request necessary when employer withdrawing previously agreed-up accommodations]; Colter v. Yale University, 2000 WL 559023 (D. Conn. 2000) [request not necessary for new job when employee who is already being accommodated requests a change].

53.     The City also cites a number of other cases, however none pertain explicitly to civil servant employees. In Loulseged v. Akzo Nobel Inc., the court determined that the plaintiff's non-cooperation was to blame for the breakdown in the accommodation process, which was not the case here. Indeed, the only case to which the City cites that pertains explicitly to civil service employees explicitly is Moss v. Harris Cnty. Constable Precinct One, 851 F.3d 413 (5th Cir. 2017). In Moss, a former deputy constable filed against his employer after being terminated while recovering from a back surgery. His claims failed, in part, because he did not demonstrate that he was capable of performing in a light duty position, or that a light duty alternative was available. Id. at 419. Here, Vera has demonstrated not only was an alternative position available, but that he was assigned to that alternative position and was performing

his duties and responsibilities with absolutely no performance complaints from the Defendant.

54.    The City has not demonstrated any legitimate reason why Vera could not continue his employment in an accommodated position, such as the desk job he held or another non-officer civilian position. Instead, the City revoked this accommodation and terminated employment. *See* De John v. Potter, Postmaster General, United States Postal Service, (Eastern area), Agency, EEOC DOC 7A20030, 2004 WL 1084818 (E.E.O.C. 2004) [removal of longtime accommodation reflects bad faith]; Robinson v. Wash. Metro. Area Transit Auth., 2020 U.S. Dist. LEXIS 21324, 2020 WL 601896, at *4 (D.D.C. Feb. 7, 2020) [noting "withdrawing a pre-existing accommodation may indeed give rise to liability" where the accommodation is withdrawn without evidence of further negotiations between the parties]. In summary, Vera has brought forth, at the very least, contested issue of material fact as to each argument set forth by the City.  As such, this "failure to accommodate claim" is best left for jury.

55.    There is one issue that the Court can consider, and address as a matter of law.  As noted above, non-disabled persons have a litany of pre-termination and post-terminations protections pursuant to Chapter 143 of the Lo cal Government Code, and the City's Rules, Police General Orders and Commission Rules promulgated thereunder.  Why should a police officer that for instance, actually assaulted a citizen be able to keep his job and/or be provided other options, but that a person with a mental health condition, where there is speculation that person *might* do something in the future, have no such rights and remedies.  Here the Court can find the City of Austin's rules, customs and practices related to Chapter 143 violate Section 504 of the Rehabilitation Act of 1973, on it's face. The City's *Motion For Summary Judgement* on Vera'a failure to accommodate claim can be denied as to either or both.

## VIII.  ARGUMENT AND AUTHORITIES- VERA's TOMA CLAIM IS VIABLE

56.    The City argues Vera asserts 3 arguments under Texas Open Meeting Act ("TOMA").  First, he was not notified of the November 1, 2021, March 10, 2022, May 3, 2022, and June 6, 2022, Commission meetings. Second, his name was improperly published in the minutes of the Four Meetings.[16] Third, he challenged an inconsistency in the March 10, 2022 minutes. They argue, these arguments fail because TOMA does not apply to the Four Meetings nor did he seek an injunction or mandamus action. Morever, each meeting Agenda substantially complied with TOMA.  Last any inconsistencies in the March 10, 2022 Meeting and later amendments were harmless error.[17] [DE# 53, pgs, 22- 27/42].

57.    In an effort to avoid redundancy, Vera incorporates by reference as if fully set forth herein, his *Partial Motion For Summary Judgement* [DE# 47] and *Reply* [DE# 48].  The notice requirements of TOMA Act are set forth in Sections 551.041, 541.043 [notice must be written and posted in a public spot 72 hours before the meeting] and 551.050 [physically posted at City Hall). The Act requires governing bodies to provide notice to the public of the date, hour, place, and subject of all meeting, City of Bells v. Greater Texoma Util. Auth., 744 S.W.2d 636, 639, fn. 4.  (Tex. App. -- Dallas 1987, no writ) whether open or closed, whether planned or emergency.  An action taken by a governmental body that violates the Act is voidable. Tex. Gov't Code Ann. §551.141.  An interested person may bring an action by mandamus or injunction to stop, prevent or *reverse* (emphasis added) a violation of this chapter. §551.142(a).  A Court may access reasonable fees.

---

[16].  Vera waives this argument.

[17].  Vera waives this argument.

58. The City argues that the Commission meeting, held pursuant to Section 551.074 deals with personnel matters, is *Closed* and thus they did not need to give notice as required by TOMA. Section 551.002 requires every meeting to be open.  Section 551.041 requires that the City give notice to the public of all meetings.  Section 551.0411 lists certain instances when notice requirements are not mandated, it does not list personnel matters.  While it is true that Section 551.074 does not require a personnel matter to be an *Open Meeting* there is nothing in this section that supports the City's position they did not need to give the public notice of the meeting. They rely upon Nix v. City of Beaumont, 2019 Tex. App. LEXIS 8836 *17 (Tex. App- Beaumont, October 3, 2019) for this proposition. They provide no other case in support of this rather global proposition a City need not (ever) provide notice to a session dealing with personnel  matters, because none (likely) exist.  There are a few reasons why.  First, Beaumont actually posted notice for the initial matters, which Austin has not done here. More  relevant, Beaumont and Nix later signed Agreement that, they argued, was not a contract amendment (that required posting) and thus was not required to be posted. In other words it was decided on the facts, that are not operative here.  Nix at *7.  Here the City admits that they in any case posted the Agenda on their website.  By doing so they have waived the argument they did not need to do so. *See* . Nix at *7 *citing* Sun Expl. & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987) ["... Waiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."]. The argument the City Commission did not need to satisfy TOMA fails.

59. The City argues Vera can *only* ask the Court to remedy the City's failures either by mandamus or injunction, and because he did not do so, he cannot procure any relief

requested. The City previously admitted that a Mandamus must be filed in an Appellate Court pursuant to the Rules of Appellate Procedure 52.1. [DE# 48, p. 8-9/22]. Of course this would be impossible as there is nothing to appeal. Moreover, an injunction surely would have been futile. So what's left for Vera to do? File this suit and seek equitable relief [DE# 6-4, p. 228/255] which the City also admitted the Court can grant, *see* In Re Int'l Profit Associates, Inc. 274 S,.W.3d 672, 676 (Tex. 2009). [DE# 48. p. 18/22] . Moreover and in any case, Texas Courts have long recognized that "The key to determining whether a cause of action has been pleaded is whether there are sufficient allegations to give fair notice of the claim, not whether certain magic words are used in certain portions of the petition." Daniels v. Allen, 811 S.W.2d 278, 280 (Tex. App.—Tyler 1991, no writ), overruled on other grounds, Tucker v. Thomas, 419 S.W.3d 292 (Tex. 2013). Vera has done so. In summary, the District Court has jurisdiction over Vera' claim and can provide the relief he requests.

60.    The City last argues the meetings convened by the Commission substantially satisfied the Act by posting Agendas on the City website in a timely or having it in a book. Here, they provide no caselaw in support of the proposition that satisfying the web-posting requirements of the Act or having an Agenda in someone book is sufficient. While it may be true Vera deserved no greater notice than the public, that does not support the argument the public did not deserve actual notice in the actual environment with meeting was held or on the City's website. The District's argument here can likewise be rejected.

## VIII. CONCLUSION

61.    In their *Motion* the City relies upon their own carefully crafted affidavits and excerpted documents from their own files. In essence, it is their own story, in their own words that they

ask this Court to believe. At the summary judgment stage, the Court should view these assertions with a very high degree of caution, International Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1265-1266 (5th Cir. 1991) as a "cold read" of a motion for summary judgment is generally no substitute for a trial, because it "cannot unmask the veracity of a witness clad in a costume of deception, it cannot unveil that a seemingly well-groomed witness is coming apart at the seams or that "he fidgets when answering critical questions, his eyes shift from the floor to the ceiling and he manifests all other indicia attributed to perjurers."

## **PRAYER**

Plaintiff further prays that the Court DENY the City of Austin's *Motion For Summary Judgement* in total or in part, permit the case to proceed to trial and for such other and further relief as the Court may deem just and proper in law or equity, or as to both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Attorney
Texas Bar No. 00783829
Marty@cirkielaw.com [Email];

Ms. Julianna S. Swann, Attorney
Texas Bar No. 24130061
julianna@cirkielaw.com [Email]

Ms. Melissa Pleasant, Attorney
Admitted *Pro Hace Vice*
melissa@cirkielaw.com [Email];

Cirkiel Law Group, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
REPRESENTATIVES FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

We hereby certify that on this the 30th day of March 2026 I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system and notice was electronically provided to the following CM/ECF system participants.

Mr. Josh Ordiway, Attorney
Texas Bar No.: 241265538
jordiway@littler.com  [Email]; and
Ms. Melissa Ackie,  Attorney
Texas Bar No.:
MAckie@Litter.com  [Email]
Littler Mendelson P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 982-7250 [Telephone]
(512) 982-7248 [Facsimile]

/s/ Martin J. Cirkiel
Martin J. Cirkiel